## S01A0581. CHAPMAN v. THE STATE.
## S01A0582. MURPHY v. THE STATE.
### (548 SE2d 278)

HINES, Justice.

Damien Chapman and Reginald Murphy appeal their convictions for felony murder, in connection with the death of Jannel Sanders. For the reasons that follow, we reverse.[1]

The police found Sanders, Chapman's mother, in her apartment, dead of asphyxiation. She had been missing for several days. Her body was in the closet of the master bedroom, wrapped in a sheet,

---

[1] Sanders was killed at least three or four days before August 12, 1997. In the September 1997 term of court, a DeKalb County grand jury indicted Chapman and Murphy on one count of malice murder, and one count of felony murder while in the commission of aggravated assault. The two were tried before a jury June 1-8, 1998. The jury found each defendant guilty of felony murder and not guilty of malice murder. Chapman moved for a new trial on July 1, 1998, and amended the motion on June 30, 2000; Murphy moved for a new trial on June 22, 1998, and amended the motion on June 30, 2000. Both motions were denied in a single order on October 31, 2000. Chapman filed a notice of appeal on November 29, 2000, his appeal was docketed in this Court on January 5, 2001, and argued on April 16, 2001. Murphy filed a notice of appeal on November 28, 2000, his appeal was docketed in this Court on January 5, 2001, and submitted for decision on February 26, 2001.

and dressed in a nightgown. Her head was wrapped in a plastic bag taped to her neck; another plastic bag was outside that, unsecured. Layers of packing tape covered her head from her eyes to her lips. Her arms and legs were tied with cord and wrapped in packing tape. She was most likely incapacitated when the plastic bags and tape were put on her head. She was dead when her wrists and ankles were tied.

Chapman, aged 15, lived with Sanders. He often cursed and threatened her. He and co-defendant Murphy were frequently in the apartment in the days before the body's discovery. When asked about Sanders, they said she was not home.

There was testimony about several inconsistent statements Chapman made to the police.[2] In the first statement, Chapman reported that: he had an argument with Sanders; he said that he wished she was dead; he was listening to music in his room when he heard a scream, ran out and saw Sanders with a cord around her neck, apparently dead; and he took trash bags to her room.

In the second statement, Chapman said that: he was ironing his mother's work uniform; he then found Sanders lying in her bedroom with a black cord around her neck; he did not call the police because he thought no one would believe him; he was only joking when he said he wished his mother was dead; he told a friend of Sanders that she was in the hospital; and he took garbage bags into Sanders's room.

In the third statement, Chapman said that: he argued with Sanders over his use of her credit card; he wanted Sanders dead, and asked to have her killed; he witnessed Sanders's death; he was washing dishes when he heard her scream; he thought she might have been alive when he got to the bedroom; money was taken from her room; and he knew he was wrong in not calling the police.

Murphy also made several statements to the police. He initially denied knowing anything about Sanders's death, then admitted seeing the body, already bound, but denied moving it. He later stated that he placed the bag on Sanders's head, wrapped her in a sheet, and put her in the closet. Then he said that he did not place the bag over her head. He also said that his fingerprints might be on the duct tape because he had used it to go around the plastic bag.

Murphy also told Collier, a fellow prisoner while Murphy was awaiting trial, a version of the events surrounding the murder. Murphy stated that he "killed the woman." He was at Sanders's house when she and Chapman argued over Chapman's use of Sanders's

---

[2] Testimony concerning the statements was designed to avoid any mention of Murphy. Similarly, testimony concerning Murphy's statements avoided any mention of Chapman.

bank card. Chapman told Murphy that he hated Sanders and wished her dead. Murphy asked Chapman if he wanted Murphy to kill her, and Chapman said no, but that he wished that she were dead. Murphy did not like the way Sanders treated Chapman and, when Chapman was washing dishes, Murphy contemplated the situation while smoking crack cocaine. He then choked Sanders with a video game controller. Chapman came in, asked Murphy why he had done it, and Murphy said that Chapman wanted Sanders dead and planned for Murphy to do it. Murphy then bound Sanders, taped her mouth, put a plastic bag over her head, put her body in the closet, and took money from her purse to buy drugs. Chapman and Murphy stayed in the apartment for three days, and planned to go to New York.

1. The evidence was sufficient to authorize the jury to convict the defendants of felony murder. *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).

2. Both defendants assert that the trial court erred in instructing the jury on aggravated assault. We agree. The indictment specified that the defendants committed felony murder while in the commission of aggravated assault by suffocating Sanders "with a plastic bag and tape, objects which when used offensively against a person are likely to result in serious bodily injury." However, the court instructed the jury that "A person commits the offense of 'aggravated assault' when that person assaults another person with the intent to murder, rape, or rob. . . . The intent to murder is a material element of aggravated assault, as charged in this case."

After some deliberation, the jury requested further instruction concerning the difference between malice murder and felony murder. The trial court recharged on the two crimes, again stating that aggravated assault is an assault done "with intent to murder, rape, or rob." Before retiring, the jury expressed confusion about aggravated assault, and the court instructed that

> [i]n "aggravated assault" [pause] there does not necessarily have to be [pause] an intent to do physical injury to someone by killing them. For example: A person commits the [sic] aggravated assault when a person assaults another person with intent to murder [pause] to rape, or to rob. Or [pause] with a deadly weapon or any object, device, or instrument which, used offensively against a person, is likely to or actually does result in serious bodily injury.

Before the jury retired, the court also charged

> if you find and believe beyond a reasonable doubt that the defendant [sic] committed the homicide alleged in this bill of

indictment, at the time that the defendant was [sic] engaged in the commission of the felony of aggravated assault [pause] then you would be authorized to find the defendant guilty of murder [pause] whether the homicide was intended or not. A person commits "aggravated [pause] assault" when he assaults another human being [pause] with a plastic bag and tape, objects, when used offensively against a person, are likely to result in serious bodily injury. That must be proved beyond a reasonable doubt.[3]

The aggravated assault statute does set forth that a person is guilty of an aggravated assault when he assaults with "intent to murder, to rape, or to rob." OCGA § 16-5-21 (a) (1). Although generally it is not error to charge the jury on a portion of the Code section that may be inapplicable under the facts in evidence, "it is error 'to charge (the jury) that a crime may be committed by either of two methods, when the indictment charges it was committed by one specific method.' [Cit.]" *Childs v. State*, 257 Ga. 243, 253 (17) (357 SE2d 48) (1987). "If there is a reasonable possibility that the jury convicted the defendant of the commission of a crime in a manner not charged in the indictment," then the error is harmful. Id.

Here there was evidence from which the jury could conclude that Sanders was killed with the intent to rob;[4] one of Chapman's statements recounted that money was taken from her room, he had previously taken money and credit cards from her, and Murphy admitted to Collier that he took money from Sanders's purse. Compare *Welker v. State*, 273 Ga. 36, 38 (5) (537 SE2d 661) (2000).

The court did not instruct the jury to limit its consideration of aggravated assault to only the method set forth in the indictment, and not to consider aggravated assault as having occurred in another manner charged. "Without [such a] remedial instruction, the conviction is defective because 'there is a reasonable possibility that the jury convicted the defendant of the commission of a crime in a manner not charged in the indictment.'" *Dukes v. State*, 265 Ga. 422, 423 (457 SE2d 556) (1995). A limiting instruction is necessary to direct the jury to consider only whether the defendants committed an aggravated assault with deadly weapons. Id. at 424. Although the

---

[3] The defendants separately enumerate as error this re-charge, arguing that it is tantamount to instructing the jury that a plastic bag and tape *are* deadly weapons, rather than instructing the jury that it must find as fact that a plastic bag and tape are deadly weapons. Our disposition in Division 2 makes it unnecessary to address this issue.

[4] As the jury acquitted both defendants of malice murder, any error in charging the jury that aggravated assault could be committed with intent to murder was harmless. See *Welker v. State*, 273 Ga. 36, 38 (5) (537 SE2d 661) (2000). There was no evidence of intent to rape, and the charge on that principle was therefore harmless. Id.

court also read the charge as set forth in the indictment, under these circumstances, we cannot conclude that doing so prevented the jury from being misled by the instructions. Compare *Moore v. State*, 207 Ga. App. 892, 895 (2) (429 SE2d 335) (1993).

As aggravated assault was the underlying felony for the felony murder convictions, they must be reversed.

3. We take this opportunity to note and comment upon the circumstances concerning closing argument. Before closing argument, Chapman inquired whether each defendant was entitled to an hour to make his argument, or whether there was an hour total for both defendants. The court stated that it would "arbitrarily" give each defendant 45 minutes. During Chapman's closing argument, one of the jurors required a recess, at the end of which Chapman informed the court that research had revealed that in a capital case each side had up to two hours to make closing arguments. The court ruled that this was not a capital case as the death penalty was not involved. This was error.

OCGA § 17-8-73 requires that "[i]n cases involving capital felonies, counsel shall be limited to two hours for each side." For the purposes of that Code section, malice murder and felony murder are capital felonies even when the death penalty is not sought. See *Monroe v. State*, 272 Ga. 201, 202 (2) (528 SE2d 504) (2000). The trial court has no discretion to impose any further limit on the time for closing argument, and failure to afford the parties the full time is, as a matter of law, error.[5] *Hayes v. State*, 268 Ga. 809, 813 (7) (493 SE2d 169) (1997).

4. Chapman raises other issues that may occur on re-trial.

(a) He contends that the trial court erred in admitting his statements as they did not meet the test for a voluntary waiver of his *Miranda* rights by a juvenile. See *Riley v. State*, 237 Ga. 124, 128 (226 SE2d 922) (1976). When considering such a waiver, the court is to consider the

> (1) age of the accused; (2) education of the accused; (3) knowledge of the accused as to both the substance of the charge . . . and the nature of his rights to consult with an attorney and remain silent; (4) whether the accused is held incommunicado or allowed to consult with relatives, friends or an attorney; (5) whether the accused was interrogated before or after formal charges had been filed; (6) methods used in interrogations; (7) length of interrogations; (8)

---

[5] We need not address the State's argument that the defendants acquiesced in the court's ruling and thereby waived any objection to the denial of their statutory rights under OCGA § 17-8-73.

whether vel non the accused refused to voluntarily give statements on prior occasions; and (9) whether the accused has repudiated an extra judicial statement at a later date.

Id.

Chapman was fifteen years old and entering the ninth grade. He knew he was being charged with murder and that he had the right to a lawyer. He was allowed to speak with his aunts, one of whom, Reid, was appointed his guardian. There was no evidence that the interrogations were abusive or overly long. Chapman never refused to give a statement, and although his statements were inconsistent, he has not repudiated them. That Reid told Chapman to tell the truth does not constitute a failure to act on his behalf. See *Burnham v. State*, 265 Ga. 129, 133 (4) (453 SE2d 449) (1995). Thus, the court did not err in finding that, considering the totality of the circumstances, Chapman knowingly and voluntarily waived his rights. *Gilliam v. State*, 268 Ga. 690, 692 (2) (492 SE2d 185) (1997).

(b) The trial court admitted hearsay statements of Sanders concerning prior difficulties between her and Chapman. For a statement to be admitted under OCGA § 24-3-1 (b), the necessity exception for the admission of hearsay evidence, there must be particularized guarantees of trustworthiness. See *Abraha v. State*, 271 Ga. 309, 313 (2) (518 SE2d 894) (1999). Chapman contends that the guarantees of trustworthiness surrounding these statements were insufficient.

Sanders's statements to Officer Clark and Detective Croft were made to investigating officers shortly after the events that Sanders was reporting, and are admissible. See *White v. State*, 268 Ga. 28, 30 (2) (486 SE2d 338) (1997). Her statements to Reid, McDowell, Carson, and Hall were "[u]ncontradicted statements made to one in whom the deceased declarant placed great confidence and to whom she turned for help with her problems [which] are admissible under the necessity exception. [Cits.]" *Ward v. State*, 271 Ga. 648, 650 (2) (520 SE2d 205) (1999). However, the State did not establish indicia of reliability sufficient to render the statements Sanders made to Hale and Mathis admissible.

*Judgments reversed. All the Justices concur.*

DECIDED JUNE 4, 2001.

*James D. Michael*, for appellant (case no. S01A0581).
*Virginia W. Tinkler*, for appellant (case no. S01A0582).
*J. Tom Morgan, District Attorney, Barbara B. Conroy, Kristen L. Wood, Assistant District Attorneys, Thurbert E. Baker, Attorney Gen-*

*eral, Paula K. Smith, Senior Assistant Attorney General, Tammie J. Philbrick, Assistant Attorney General*, for appellee.