A07A1752. LeMON v. THE STATE.
(660 SE2d 11)

PHIPPS, Judge.

A jury found Jerome LeMon guilty of armed robbery and aggravated assault in connection with his attack on the driver and another passenger of the car in which all three men were traveling. On appeal from his conviction, LeMon argues that the trial court erred when it denied his objection to the state's use of peremptory strikes, when it charged and recharged the jury, and when it allowed the state to bolster the credibility of one of its witnesses. We find no reversible error and affirm.

On appeal from a criminal conviction, we view the evidence in the light most favorable to the verdict, with the defendant no longer enjoying a presumption of innocence.[1] We neither weigh the evidence nor judge the credibility of witnesses, but determine only whether the evidence was sufficient for a rational trier of fact to find the defendant guilty of the charged offense beyond a reasonable doubt.[2]

So viewed, the record shows that LeMon went with some friends to a party in April 2006. LeMon filmed women at the party with a

---

[1] *Reese v. State*, 270 Ga. App. 522, 523 (607 SE2d 165) (2004).

[2] *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).

hand-held video camera and asked them questions such as when they last had sex. The host later told one of the friends, M. C., that LeMon was behaving obnoxiously and needed to leave. LeMon, M. C., and one other man, P. K., left together in a car, with P. K. driving, LeMon riding in the front passenger seat, and M. C. riding in the back seat. Other friends left at the same time, following them in another car.

As they drove on the highway, LeMon became agitated and argumentative, yelling at P. K. and grabbing his face. M. C. told LeMon that he was going to call 911, but LeMon ordered him to turn over his cell phone. When M. C. refused, LeMon told him that he had a knife in his pocket, that he would "stab [him] in the heart right now," and that he had "a clear shot to [his] heart." LeMon then pulled a knife out of his pocket and again demanded M. C.'s cell phone. When M. C. complied, LeMon threw the phone down on the floor of the car, pointed the knife at P. K., and demanded his cell phone as well, which P. K. surrendered. LeMon then grabbed M. C.'s shirt.

In the struggle that ensued, M. C. punched LeMon in the face and kicked him. When P. K. stopped the car along the side of the highway, M. C. jumped out, ran back to the second car, and used a different cell phone to call 911. P. K. also abandoned the car, taking the car keys with him, and got into the second car. LeMon was sitting near the first car when the police arrived. The knife he had used to threaten the victims was in his pocket when he was taken into custody. LeMon was later convicted of two counts of aggravated assault as well as two counts of armed robbery. His motion for new trial was denied.

1. LeMon first argues that he is entitled to a new trial because the state exercised its peremptory strikes in a racially discriminatory manner prohibited under *Batson v. Kentucky*.[3] We disagree.

> The evaluation of a *Batson* challenge involves a three-step process: (1) the opponent of a peremptory challenge must make a prima facie showing of racial discrimination; (2) the proponent of the strike must then provide a race-neutral explanation for the strike; and (3) the court must decide whether the opponent of the strike has proven discriminatory intent.[4]

> The ultimate burden of persuasion regarding racial motivation rests with, and never shifts from, the opponent of the strike. The trial court's findings as to whether the opponent

[3] 476 U. S. 79 (106 SC 1712, 90 LE2d 69) (1986).
[4] *Flanders v. State*, 279 Ga. 35, 37 (2) (609 SE2d 346) (2005).

of the strike has met the burden of persuasion are entitled to great deference and will be affirmed unless clearly erroneous.[5]

Although voir dire was not recorded in this case, the parties stipulated afterward that of the forty-two prospective jurors in the venire, five were African-American. Two of these were dismissed for cause. The state used three of its nine peremptory challenges to strike all three remaining African-American prospective jurors. When LeMon objected, the trial court commented that it "[did not] think [that the state's use of strikes was] systematic" and ruled that LeMon had not made out a prima facie case of discrimination.

(a) At both the conclusion of jury selection and the hearing on his motion for new trial, LeMon's objection was based only on "the raw number of strikes used."[6] LeMon argues that the use of three out of nine strikes (33 percent) against African-Americans from a venire of forty-two, including five African-Americans (12 percent), is a "total or seriously disproportionate exclusion"[7] sufficient to make out a prima facie case of discrimination.[8] Pretermitting whether the 21-point differential between the percentage of African-Americans in the venire and the percentage of state's strikes used against African-Americans was sufficient on its own to make out a prima facie case,[9] we conclude that under the circumstances here, where the state's strikes resulted in the total exclusion of African-Americans from the jury, LeMon made out a case of prima facie discrimination. The trial court erred when it ruled to the contrary.[10]

(b) At the hearing on LeMon's motion for new trial, the state offered race-neutral explanations of its strikes of the three remaining African-American prospective jurors. The prosecuting attorney testified that he struck the first prospective juror because she had children and grandchildren close in age to LeMon and because her responses to questions in voir dire suggested that she was biased

---

[5] *Rakestrau v. State*, 278 Ga. 872, 874 (3) (608 SE2d 216) (2005) (citations and punctuation omitted).

[6] *Stewart v. State*, 277 Ga. 768, 770 (4) (596 SE2d 143) (2004).

[7] *Batson*, supra, 476 U. S. at 93.

[8] See, e.g., *Staples v. State*, 209 Ga. App. 802 (1) (434 SE2d 757) (1993) (prima facie case established where state struck five of eight prospective black jurors out of a forty-two-person venire).

[9] See, e.g., *Horton v. State*, 234 Ga. App. 478, 481 (1) (507 SE2d 221) (1998) (15 percent differential did not establish prima facie case of discrimination); compare *Griffeth v. State*, 224 Ga. App. 462, 464 (2) (480 SE2d 889) (1997) (30 percent differential established prima facie case of discrimination).

[10] See *Glanton v. State*, 189 Ga. App. 505, 506 (2) (376 SE2d 386) (1988) (strikes of all three African-Americans in venire made out a prima facie case); *Durham v. State*, 185 Ga. App. 163, 166 (3) (363 SE2d 607) (1987) (strike of single African-American in venire made out an "extremely weak" prima facie case).

toward him. The second prospective juror was struck based on her belief that drinking alcohol was morally wrong (suggesting that she might be prejudiced against the victims, who had been drinking at the party) and because her uncle had been convicted of armed robbery. The third prospective juror was struck because she expressed lingering resentment against the police in connection with her arrest for driving without a license.

"Unless a discriminatory intent is inherent in the proponent's explanation, the reason offered will be deemed race[-]neutral."[11] A juror's family member's prior conviction or arrest history provides the state with a sufficiently race-neutral explanation for a peremptory strike.[12] Defense counsel could not show that these explanations were pretextual because no transcript of voir dire was available. In the absence of such a transcript, we cannot say that the trial court's denial of LeMon's *Batson* motion was clearly erroneous as to any of these three prospective jurors.[13]

2. LeMon argues that the trial court erred when it failed to respond specifically to a question from the jury suggesting that there were three rather than four elements of the crime of armed robbery.[14] The record shows, however, that defense counsel approved of a recharge consisting of the standard charge before it was given and did not object to it afterward. LeMon has thus waived this issue for purposes of appeal.[15]

3. LeMon asserts that the trial court erred when it failed to charge the jury on the affirmative defense of self-defense (or justification). Again, we disagree. It is true that "[w]here an affirmative defense is raised by the evidence, including a defendant's own statement, the trial court must present that defense to the jury as part of its charge, even absent a request and even absent a reservation of right to later object."[16] The trial court was under no duty to give a

---

[11] *Jackson v. State*, 265 Ga. 897, 898 (2) (463 SE2d 699) (1995) (citation and punctuation omitted).

[12] *Henry v. State*, 265 Ga. 732, 734 (2) (462 SE2d 737) (1995).

[13] See *Morris v. State*, 246 Ga. App. 260, 262-263 (540 SE2d 244) (2000) (affirming denial of *Batson* motion when prospective juror had given "hesitating and equivocal" response in voir dire); *Williams v. State*, 236 Ga. App. 190, 191-192 (1) (511 SE2d 561) (1999) (upholding strikes of jurors whose relatives had been convicted of crimes).

[14] See OCGA § 16-8-41 (a) (defining armed robbery as the taking, "with intent to commit theft," of the "property of another from the person or the immediate presence of another by use of an offensive weapon").

[15] See *Davis v. State*, 278 Ga. App. 628, 630-631 (2) (629 SE2d 537) (2006) (failure to object to recharge waives objection on appeal).

[16] *Jones v. State*, 226 Ga. App. 619, 621 (1) (487 SE2d 371) (1997) (citation omitted).

charge on self-defense, however, when LeMon denied drawing his knife, the act supposedly undertaken in self-defense.[17] There was no error.

4. Citing *Chapman v. State*,[18] LeMon argues that the trial court erred when it described simple assault as well as aggravated assault in its charge to the jury. We disagree.

In *Chapman*, the Supreme Court of Georgia reversed a felony murder conviction because the court's charge and the evidence authorized a guilty verdict on an underlying aggravated assault in a manner not alleged in the indictment, yet the court failed to instruct the jury to limit its consideration to the manner of aggravated assault alleged in the indictment.[19] The indictment in this case alleged that LeMon assaulted the victims "with a knife, a deadly weapon, by brandishing said knife"; the trial court described simple assault only in the process of explaining the difference between it and aggravated assault; and the trial court directed the jury's attention to the indictment and plea as "form[ing] the issue which you are to decide." Because there was no reasonable probability here "that the jury convicted the defendant of the commission of a crime in a manner not charged in the indictment,"[20] LeMon's argument lacks merit.

5. Finally, LeMon asserts that the trial court erred when it allowed a police officer to testify that immediately after a crime, persons at the scene often leave out details when they describe the incident. On appeal, LeMon argues that coming as it did after LeMon's pointing out of discrepancies between the friend's account of events and that of a police officer also at the scene, this testimony amounted to bolstering. At trial, however, LeMon objected only on the basis of relevance. He has thus waived consideration of any other objection on appeal.[21]

*Judgment affirmed. Johnson, P. J., and Mikell, J., concur.*

DECIDED MARCH 3, 2008 —
RECONSIDERATION DENIED MARCH 26, 2008 —

*Scott P. Semrau*, for appellant.

---

[17] See *Scott v. State*, 250 Ga. App. 870, 871 (1) (553 SE2d 276) (2001) (trial court did not err in refusing to give requested charge on self-defense as affirmative defense to aggravated assault where defendant denied drawing a gun).

[18] 273 Ga. 865 (548 SE2d 278) (2001).

[19] Id. at 867-869 (2).

[20] Id. at 868 (punctuation omitted).

[21] See *McCrary v. State*, 208 Ga. App. 824, 825 (1) (432 SE2d 254) (1993) (failure to raise objection other than relevance waives that objection on appeal).

*Patrick H. Head, District Attorney*, for appellee.