In the Supreme Court of Georgia

Decided: November 2, 2015

S15A0650. WETZEL v. THE STATE.

NAHMIAS, Justice.

Appellant Jeremy Wetzel was a high school paraprofessional who engaged in highly inappropriate, sexually oriented electronic communications with a 15-year-old student, which included emailing her two photographs of his erect penis. The question in this case is whether Wetzel's conduct, as it was alleged in the indictment the State brought against him, violated the criminal statutes with which he was charged. At trial, the jury acquitted Wetzel of child molestation in violation of OCGA § 16-6-4 (a) (2) (Count 2), but it convicted him of computer pornography and child exploitation in violation of OCGA § 16-12-100.2 (d) (1) (Count 1) and of electronically furnishing obscene material to a minor in violation of OCGA § 16-12-100.1 (b) (Count 3).

The computer pornography conviction was based on the State's argument at trial that the jury gets to decide whether, in its opinion, Wetzel's conduct should be deemed "an unlawful sexual offense against a child," as that phrase

is used in § 16-12-100.2 (d) (1).  But it is a bedrock principle of Georgia law that only the legislature can prescribe what conduct will be deemed criminal, and it is also fundamental that a person may be found guilty only of crimes that were defined before he committed the allegedly illegal acts.  Because the State misled the jury on this point and the trial court's jury instructions did nothing to correct that misinformation, Wetzel's conviction on Count 1 must be reversed.  Wetzel's challenges to his conviction on Count 3, however, are meritless, so we affirm that conviction.

1.      Viewed in the light most favorable to the verdicts, the evidence at trial showed the following.  Wetzel was a paraprofessional for special education students at North Oconee High School.  He also helped with a club whose student members worked with special education students at the school.  S.B.J. first met Wetzel through the club, which she joined in the fall of her sophomore year at North Oconee.  S.B.J. was 15 years old; Wetzel was 24.  They became Facebook friends and started chatting online.

On the evening of November 15, 2011, shortly after their Facebook communications began, S.B.J. used the cell phone number Wetzel posted on Facebook to begin exchanging text messages with him.  When S.B.J.'s cell

phone stopped sending and receiving texts at 10 p.m. that night because of a restriction her parents had set on her phone, she switched to communicating with Wetzel via a text messaging app on her sister's iPod Touch, which can connect to the internet and download apps but cannot make phone calls. Wetzel and S.B.J. exchanged text messages until 1:50 a.m. S.B.J. then texted Wetzel again after waking up on November 16, and resumed texting him when she got home from school that day. S.B.J. characterized the communications on Facebook and the initial text messages as "normal, casual conversations," but by the evening of November 16, the discussions became sexual in nature.

At some point that night, Wetzel asked S.B.J. by text about what size penises she had seen. He then attempted to text her a picture of his penis, but her iPod texting app could not receive pictures. So Wetzel switched to email and around 11 p.m., he used his cell phone to send two photographs from his Hotmail address to S.B.J.'s Gmail address. One picture showed Wetzel's nude torso with an erect penis and the other was a close-up of just his erect penis. S.B.J. testified that a couple of days later, Wetzel sent her more pictures[1] and

---

[1] There was no evidence of what was depicted in these pictures, other than S.B.J.'s testimony that they could have been the same pictures Wetzel sent her on November 16.

3

asked her via text message, "What do I get in return?" S.B.J. testified that she then took two pictures of herself topless (one wearing sweat pants and one wearing only underwear) and sent them electronically to Wetzel. Their communications continued for a few more days, ending when Wetzel indicated that he wanted to resume a relationship with his former girlfriend.

On December 6, 2011, S.B.J. showed the November 16 pictures of Wetzel to two of her friends. The next day, those friends reported the pictures to a teacher. Wetzel and S.B.J. were interviewed by school administrators, and S.B.J. showed the principal the November 16 emails with the pictures, which were still in her trash folder. Wetzel was then terminated and told to leave the school. The police were notified, and he was arrested later that day. Two days later, the police obtained a search warrant for Wetzel's house and identified his bathroom as the background of the pictures. His cell phone and laptop computer were taken into custody, but no evidence of his communications with S.B.J. was found on them. His cell phone records obtained from his provider, however, showed numerous texts to and from S.B.J.'s cell phone number and the number linked to the iPod's texting app. The two naked photographs of Wetzel from November 16 were recovered from S.B.J.'s Gmail account. The text messages

4

sent to and from the iPod could not be downloaded from the app, but a few texts that had been sent between Wetzel and S.B.J. in the early morning hours of December 1 were recovered by taking pictures of the iPod screen showing the texts. At trial, S.B.J. testified that she and Wetzel never had any inappropriate physical contact.

Wetzel was indicted for computer pornography, tracking the language of OCGA § 16-12-100.2 (d) (1) (Count 1); child molestation, tracking the language of OCGA § 16-6-4 (a) (2) (Count 2); and electronically furnishing obscene material to minors, tracking the language of OCGA § 16-12-100.1 (b) (1) (A) (Count 3). Before trial, Wetzel filed a timely general demurrer as to all counts, raising both constitutional and non-constitutional claims, which the trial court denied. After a four-day trial from May 28 to 31, 2013, the jury acquitted Wetzel on Count 2 but found him guilty on Counts 1 and 3. The trial court sentenced him to eight years, to serve two years in prison, on Count 1 and one concurrent year in prison on Count 3. Wetzel filed a timely notice of appeal.[2]

---

[2] Wetzel directed his appeal to the Court of Appeals, which issued an opinion on November 17, 2014, affirming the trial court on all of the non-constitutional issues Wetzel raised and concluding that he had waived review of the constitutional challenges he enumerated because he had not raised them in and obtained a ruling on them from the trial court. Wetzel filed a motion for reconsideration, which was granted on the ground that he had in fact raised and obtained rulings on

5

2. We first consider Wetzel's challenges to his conviction for violating

OCGA § 16-12-100.2 (d) (1). In Count 1 of the indictment, the State alleged

that Wetzel

> did intentionally utilize an electronic device, to wit: a cellular
> phone, to seduce, solicit, and entice [S.B.J.], a child under 16 years
> of age, to engage in the sending and receiving of nude photographs,
> conduct that is, by its nature, an unlawful sexual offense against a
> child; in violation of OCGA § 16-12-100.2 (d)[.]

This charge tracks the language of the 2011 version of the statute, which made

it unlawful for any person

> to utilize a computer on-line service or Internet service, including
> but not limited to a local bulletin board service, Internet chat room,
> e-mail, on-line messaging service, or other electronic device, to
> seduce, solicit, lure, or entice, or attempt to seduce, solicit, lure, or
> entice a child or another person believed by such person to be a child
> to commit any illegal act described in Code Section 16-6-2, relating
> to the offense of sodomy or aggravated sodomy; Code Section
> 16-6-4, relating to the offense of child molestation or aggravated
> child molestation; Code Section 16-6-5, relating to the offense of
> enticing a child for indecent purposes; or Code Section 16-6-8,
> relating to the offense of public indecency or to engage in any
> conduct that by its nature is an unlawful sexual offense against a
> child.

OCGA § 16-12-100.2 (d) (1). A "child" is defined as "any person under the age

his constitutional claims. The Court of Appeals therefore vacated its opinion and transferred the case to this Court as coming within our exclusive appellate jurisdiction over constitutional questions. See Ga. Const. of 1983, Art. VI, Sec. VI, Par. II (1).

of 16 years." OCGA § 16-12-100.2 (b) (1).[3]

(a)     Most of Wetzel's challenges to his conviction under § 16-12-100.2 (d) (1) focus on his disagreement with the State over the meaning of the final clause in the statute – "or to engage in any conduct that by its nature is an unlawful sexual offense against a child." At trial and in his initial briefs to this Court, Wetzel principally argued, contrary to basic principles of grammar and logic, that this phrase relates only to violations of OCGA § 16-6-8.[4] Wetzel based this argument on the fact that the statute says that it is a crime to use an electronic device to seduce a child in order to violate "Code Section 16-6-8, relating to the offense of public indecency or to engage in any conduct that by its nature is an unlawful sexual offense against a child," with no punctuation

---

[3] This statute was first enacted in 1999, see Ga. L. 1999, p. 232, and has since been amended several times, most recently in 2013. See Ga. L. 2013, p. 663.

[4] OCGA § 16-6-8 (a) provides:

(a) A person commits the offense of public indecency when he or she performs any of the following acts in a public place:
     (1) An act of sexual intercourse;
     (2) A lewd exposure of the sexual organs;
     (3) A lewd appearance in a state of partial or complete nudity; or
     (4) A lewd caress or indecent fondling of the body of another person.

separating the two phrases.[5]  But that reading ignores the parallel language used to identify the specified statutory offenses ("Code Section [number], relating to the offense of [title of that code section]"), and the verbal phrase "to engage" that follows the "or" parallels the verbal phrase "to commit" that precedes the enumerated offenses and would be unnecessary and nonsensical under Wetzel's reading.  Moreover, Wetzel's reading renders the final clause of § 16-2-100.2 (d) (1) meaningless, because all of § 16-6-8 relates to public indecency, so the "or engage in" clause would neither specify some sub-part of § 16-6-8 that applies under § 16-2-100.2 (d) (1) nor add any conduct to that which is already made illegal by the reference to § 16-6-8.

The State's initial interpretation of the final clause in § 16-2-100.2 (d) (1) was even worse.  At trial and in its initial brief to this Court, the State argued, contrary to basic principles of law and due process, that the phrase "unlawful sexual offense against a child" did not require the State to allege or even identify a statutory sexual offense that rendered Wetzel's conduct with S.B.J. unlawful. Instead, the State asserted, if the jury decided, as the "voice of the community,"

_____

[5] When the statute was amended in 2013, a comma was added before the "or."  See Ga. L. 2013, p. 663.

8

that it believed Wetzel's conduct was "offensive," then he had committed an "unlawful sexual offense."[6] In the context of a criminal code, however, an "offense" is defined as "[a] violation of the law." Black's Law Dictionary (10th ed. 2014). This ordinary legal usage is reinforced by the adjective "unlawful," which is defined as "not authorized by law; illegal." Id. And to leave no doubt, the General Assembly has said directly, "No conduct constitutes a crime unless it is described as a crime in this title or in another statute of this state." OCGA § 16-1-4. See also Kilpatrick v. State, 72 Ga. App. 669, 671 (34 SE2d 719) (1945) (noting that Georgia has had only statutory offenses, rather than common-law crimes, since 1833). When it comes to deciding what conduct qualifies as a crime in Georgia, the community must speak through our legislature in advance of the conduct, not through a jury after the conduct has occurred.

Indeed, the construction of § 16-12-100.2 (d) (1)'s final clause that the State advanced at trial would render the statute unconstitutional as applied here:

---

[6] During argument on Wetzel's motion for directed verdict, for example, the trial court asked the State, "What would the unlawful sexual offense be?" The State responded: "[I]t doesn't have to be an offense – I mean the word offense doesn't necessarily mean it has to [be] codified in the code section. . . . An offense is just something that offends another person and it offends the community."

9

"[O]ur liberties and rights [are] determined . . . not by a tribunal which makes its own law, but by a tribunal that obeys the law as made. . . . Unless there be a violation of law preannounced, . . . there is no crime and can be no punishment."

Sparf v. United States, 156 U.S. 51, 87-88 (15 SCt 273, 39 LEd 343) (1895) (citation omitted). See U.S. Const. Art. I, Sec. 10 ("No State shall . . . pass any ex post facto Law); Ga. Const. of 1983, Art. I, Sec. I, Par. X ("No . . . ex post facto law . . . shall be passed.").

After this Court directed the parties to be prepared to address this issue at oral argument, Wetzel apparently reacquainted himself with basic principles of our language, and the State apparently reacquainted itself with basic principles of our law. Both parties filed supplemental briefs repudiating their prior flawed interpretations of the final clause in OCGA § 16-12-100.2 (d) (1). They now agree, and we now hold, that in saying that a person violates § 16-12-100.2 (d) (1) by using an electronic device to seduce, etc. a child in order "to engage in any conduct that by its nature is an unlawful sexual offense against a child," the General Assembly was requiring the State to allege and prove that the defendant's conduct violated another specific criminal law, not allowing the jury in each case to decide retroactively whether it believed the conduct at issue was

"offensive."[7] The State's belated arrival at this conclusion, however, resulted in the jury convicting Wetzel on Count 1 of the indictment after being misled about what it needed to decide to find him guilty of that charge.

(b) Although Wetzel incorrectly interpreted OCGA § 16-12-100.2 (d) (1) until he submitted his supplemental brief to this Court, he did correctly point out to the trial court that the State was required to identify at least some underlying crime, and he argued that the jury instruction on Count 1 was incomplete. We agree.

The trial court accepted, or at least acquiesced in, the State's obdurate refusal to identify any offense outside § 16-12-100.2 (d) (1) as the relevant "unlawful sexual offense against a child." Accordingly, with respect to Count 1, the court gave only the following jury instruction:

> A person commits the offense of computer pornography when he intentionally utilizes an electronic device to seduce, solicit, or entice a child or an individual believed by such person to be a child to engage in any conduct that by its nature is an unlawful sexual

---

[7] Thus, this is not a case like the one cited by the State in the trial court and in its initial brief here, where the jury was merely called on to apply a somewhat broad term used in a criminal statute to the facts presented in evidence. See Slack v. State, 265 Ga. App. 306, 306-307 (593 SE2d 664) (2004) (explaining that "whether a particular act is 'immoral or indecent,'" as those terms are used in the child molestation statute, OCGA § 16-6-4 (a), "is a jury question that may be determined in conjunction with the intent that drives the act").

11

offense against a child. In this context, "child" means any person under the age of 16 years, and the State must prove beyond a reasonable doubt that the alleged victim was a child or was an individual believed by the accused to be a child. Additionally, the term "electronic device" may include, but is not limited to, a cellular phone.

Although this instruction tracked the relevant statutory language, it did not give the jury any inkling of the underlying offense on which Count 1 was allegedly based or refer to the elements of any such offense. Nor did the indictment, the material allegations of which the trial court elsewhere directed the jury to consider, identify the "unlawful sexual offense" referenced in Count 1. Thus, the instruction failed to give the jury "'proper guidelines for determining guilt or innocence'" on Count 1. Chase v. State, 277 Ga. 636, 639 (2004) (citation omitted). See also Thomas v. State, 95 Ga. 484, 484-485 (22 SE 315) (1894) ("The office of a charge by the court is to give to the jury such instruction touching the rule of law pertinent to the issues involved in a pending trial as will enable them intelligently to apply thereto the evidence submitted and from the two constituents law and fact make a verdict.").

The absence of guidance to the jury on this point of law was exacerbated when, during its closing argument, the State affirmatively misled the jury

regarding its consideration of Count 1, saying:

> [W]hether or not the sending and receiving of nude photographs between a 24-year-old parapro at the high school and a 15-year-old sophomore, whether or not that is conduct that by its nature is an unlawful sexual offense against a child, well, ladies and gentlemen, that's for y'all to decide. Y'all are the voice of this community. I would submit to you that this community – or in any community, the sending and receiving of nude photographs between a 24-year-old and a 15-year-old is an unlawful sexual offense against a child.

For the reasons discussed above, this was a wholly inappropriate argument, which sought to bestow upon the jury the power to create and then retroactively enforce an "unlawful sexual offense" based solely on its feelings, or its beliefs regarding how the community would feel, about Wetzel's conduct. The court did nothing to correct this inaccurate statement of the relevant law. Compare Williams v. State, 297 Ga. 460, 461-463 (773 SE2d 213) (2015) (finding that a prosecutor's misstatement of the law on justification during his closing argument was harmless when the trial court advised the jury that the instructions on the law would come from the court and then fully and correctly instructed the jury on the legal issue, without objection by the defendant).

We conclude that the minimal instruction given by the trial court on the "unlawful sexual offense" element of OCGA § 16-12-100.2 (d) (1) as charged

13

in Count 1 of the indictment, in conjunction with the blatantly incorrect explanation of the law offered by the State, left the jury without proper guidance on the relevant law. And given the reprehensible – even if not criminal – nature of Wetzel's conduct, and the resulting likelihood that the jury improperly found him guilty in accordance with the improper argument made by the State, we cannot say that this instructional error was harmless. Accordingly, we reverse Wetzel's conviction on Count 1.

3. Seeking to salvage Count 1, at least for a possible retrial, the State argues that, even if the jury in Wetzel's original trial was improperly instructed on that count, a violation of OCGA § 16-12-100.2 (d) (1) was adequately alleged in the indictment, when read as a whole, and that violation was then adequately proved at trial. See Hill v. Williams, 296 Ga. 753, 756-757 (770 SE2d 800) (2015) (explaining that a defendant may be put on notice of an alleged crime where "[t]he facts essential to proving that [he] committed the [crime] are alleged in the indictment, even if those allegations are scattered across several counts"); State v. Caffee, 291 Ga. 31, 34 (728 SE2d 171) (2012) (explaining that the constitutional protection against double jeopardy "does not preclude the State from retrying a criminal defendant whose conviction is set aside due to . . .

14

improper instructions," if the evidence at the original trial was legally sufficient for a properly instructed jury to have found the defendant guilty beyond a reasonable doubt). The State suggests that the "unlawful sexual offense against a child" alleged in Count 1 could be the child molestation offense alleged in Count 2 or the electronically furnishing obscene material to minors offense alleged in Count 3. We disagree.

(a) Child molestation can certainly be a predicate offense for a violation of OCGA § 16-12-100.2 (d) (1). In the indictment, however, the State did not allege that Wetzel used an electronic device to seduce, solicit, or entice S.B.J. in order "to commit an[] illegal act described in . . . Code Section 16-6-4, relating to the offense of child molestation." Instead, the State alleged a violation of § 16-12-100.2 (d) (1) using only the language of the final clause of that statute, accusing Wetzel of seducing, soliciting, and enticing S.B.J., a child under 16 years of age, in order "to engage in the sending and receiving of nude photographs, conduct that is, by its nature, an unlawful sexual offense against a child."

The statute is not read naturally to allow the "unlawful sexual offense" in the final clause to be one of the four types of offenses specified earlier in the

15

statute. The listed offenses are all undoubtedly "unlawful sexual offense[s]," so reading the statute as the State suggests would mean that there was no need to list them separately, and "this Court avoids interpreting statutes in a manner that renders any portion of them surplusage or meaningless." Hill v. Owens, 292 Ga. 380, 383 (738 SE2d 56) (2013). See also Scott v. State, 295 Ga. 39, 40 (757 SE2d 106) (2014) ("[A] statute is to be construed to give sensible and intelligent effect to all its provisions and to refrain from any interpretation which renders any part of the statute meaningless." (citation and punctuation omitted)).

Moreover, the enumeration of specific offenses and the final catch-all clause are separated by an "or" and introduced with similar but not identical language. Thus, a person violates OCGA § 16-12-100.2 (d) (1) by using an electronic device to seduce, solicit, lure, or entice a child in order *either* "to *commit any illegal act described in* [the following four separate code sections] *or* to *engage in any conduct that by its nature is* an unlawful sexual offense against a child." This construction does not render the final clause superfluous either, as the Criminal Code contains crimes other than the four types enumerated that may involve conduct that by its nature is an unlawful sexual offense against a minor, see, e.g., OCGA § 16-6-3 (statutory rape), and the General Assembly

16

also may have drafted § 16-12-100.2 (d) (1) so that it would not need to be amended any time a new sexual offense is enacted.

The State did not charge Wetzel with violating OCGA § 16-12-100.2 (d) (1) in relation to child molestation, and he cannot be retried based on the same conduct for a crime for which he was not originally indicted. See OCGA § 16-1-7 (b); DePalma v. State, 225 Ga. 465, 469-470 (169 SE2d 801) (1969) (explaining that allegations and proof must correspond so that the defendant will not be surprised at trial or prosecuted for the same offense twice).

(b)  The offense that Wetzel was charged with (and convicted of) in Count 3 of the indictment – electronically furnishing obscene material to a minor in violation of OCGA § 16-12-100.1 (b) (1) (A) – is not enumerated in § 16-12-100.2 (d) (1), so in theory it could have been referenced by the "unlawful sexual offense against a child" allegation in Count 1.[8]  However, Wetzel did not

---

[8] Count 3 alleged that Wetzel,

knowing the character of the material, did electronically furnish to [S.B.J.], an individual he knew and should have known was a minor, photographs of a portion of a human body which depicted sexually explicit nudity, to wit: uncovered male genitals in a discernibly turgid state, said photographs not being an incidental part of an otherwise nonoffending whole and which was harmful to minors; in violation of OCGA § 16-12-100.1 (b).

17

also violate § 16-12-100.2 (d) (1) when he committed that offense.[9]

A violation of § 16-12-100.2 (d) (1) requires that the defendant use an electronic device "to seduce, solicit, lure, or entice, or attempt to seduce, solicit, lure, or entice a child" in order "to engage in any conduct that by its nature is an unlawful sexual offense against a child." Thus, while the "unlawful sexual offense" alleged in the indictment need not be *completed* – the defendant may merely solicit or entice the child with the aim of engaging in the relevant criminal conduct – there must be such a solicitation or enticement that allows, or would allow, the predicate crime to be committed.

Wetzel's violation of § 16-12-100.1 (b) (1) (A), as alleged in Count 3, was complete as soon as he sent the emails with the pictures of his erect penis to S.B.J., thereby furnishing someone he knew or should have known was a minor

---

[9] OCGA § 16-12-100.1 (b) (1) (A) said in 2011 and still says today:

(b) A person commits the crime of electronically furnishing obscene materials to minors if:
> (1) Knowing or having good reason to know the character of the material furnished, the person electronically furnishes to an individual whom the person knows or should have known is a minor:
>> (A) Any picture, photograph, drawing, or similar visual representation or image of a person or portion of a human body which depicts sexually explicit nudity, sexual conduct, or sadomasochistic abuse and which is harmful to minors [.]

with pictures depicting "sexually explicit nudity," regardless of whether or how S.B.J. responded to his pictures. Moreover, even assuming that the nude photographs themselves could serve as the seduction, solicitation, or enticement and further assuming that Wetzel sent them intending to seduce, solicit, or entice S.B.J. to send sexually explicit photos of herself back to him (since the allegations of Count 1 speak of "sending and receiving of nude photographs"), Wetzel – an adult – would not violate § 16-12-100.1 (b) (1) (A) by *receiving* sexually explicit pictures *from* a minor.[10] Accordingly, as a matter of law, the violation of OCGA § 16-12-100.1 (b) (1) (A) alleged in Count 3 could not be the

---

[10] In its supplemental brief and at oral argument, the State suggested that to violate OCGA § 16-12-100.2 (d) (1), a person must seduce or solicit a minor to commit a sexual offense *herself,* and so we should consider whether Wetzel tried to lead S.B.J. to commit a crime. Although this might be a reasonable way to construe the statutory language making it unlawful "to seduce, solicit, lure, or entice a child . . . to commit any illegal act . . . or to engage in any conduct," this reading does not make sense in the broader context of the statute, which speaks specifically to crimes *against* children. Two of the enumerated offenses – child molestation and enticing a child for indecent purposes – are crimes that require a child victim, and the "unlawful sexual offense" in the final clause must be "against a child." Thus, the most natural reading is that § 16-12-100.2 (d) (1) is concerned about crimes the seducer plans to commit against the child. See Deal v. Coleman, 294 Ga. 170, 172-173 (751 SE2d 337) (2013) ("[W]e must afford the statutory text its 'plain and ordinary meaning,' we must view the statutory text in the context in which it appears, and we must read the statutory text in its most natural and reasonable way, as an ordinary speaker of the English language would." (citations omitted)). But even if we were to construe the statute as the State suggests, and even if there was sufficient evidence to find that Wetzel was soliciting S.B.J. to send him sexually explicit pictures of herself, S.B.J. could not violate § 16-12-100.1 (b) (1) by sending obscene material to Wetzel, because she knew Wetzel was an adult and the statute makes it a crime to electronically furnish sexually explicit pictures "to an individual whom the person knows or should have known is a minor."

19

"unlawful sexual offense" alleged in Count 1.

(c)     Despite our express invitation to do so, the State has not identified any other "unlawful sexual offense" within the meaning of OCGA § 16-12-100.2 (d) (1) that it contends was properly alleged by the indictment against Wetzel and was then proved by the evidence presented at trial.  It is not the responsibility of this Court or of the trial court to scour the Criminal Code in search of some offense that might fit that bill.  And like the jury that heard his case, we do not have the authority to declare Wetzel's conduct illegal simply because we find it detestable.  Because the State has not shown that Wetzel can be retried on Count 1, we need not address the merits of his remaining challenges to his conviction on that count, including his constitutional challenge to § 16-12-100.2 (d) (1).[11]

4.     We turn now to Wetzel's challenges to his conviction on Count 3 of the indictment for violating OCGA § 16-12-100.1 (b) (1) (A), which, as noted above in footnote 9, makes it a crime to "electronically furnish[]" certain

---

[11] Our reversal of Wetzel's conviction on these non-constitutional grounds does not deprive this Court of subject matter jurisdiction over this case, because he enumerated in his appeal a novel constitutional issue that was raised in and ruled upon by the trial court.  See East Ga. Land & Dev. Co, LLC. v. Baker, 286 Ga. 551, 552 (690 SE2d 145) (2010).

materials deemed obscene to "an individual whom the [defendant] knows or should have known is a minor."

(a)     Wetzel argues first that the evidence presented at trial was insufficient to support this conviction because there was no evidence that he electronically furnished his nude pictures to S.B.J. through the operation of a "computer bulletin board."  He similarly argues that the jury instruction on this count was defective because the jury was not told that it could find him guilty only if he operated a computer bulletin board.  Because Wetzel's interpretation of how obscene materials may be "electronically furnishe[d]" to a minor is incorrect, these arguments lack merit.[12]

At the time of Wetzel's alleged violation in 2011, "electronically furnishes" was defined, in relevant part, as "[t]o make available by allowing access to information stored in a computer, including making material available by operating a computer bulletin board."  OCGA § 16-12-100.1 (a) (3) (B) (2011).[13]  Wetzel argues that the word "including" as used in this provision is a

---

[12]   Wetzel also asserts that OCGA § 16-12-100.1 (a) (3) (B) is void for vagueness and overbreadth, but he offers no argument to support this contention.  We therefore deem it abandoned. See Braley v. State, 276 Ga. 47, 54 (572 SE2d 583) (2002); Supreme Court Rule 22.

[13]   The statute also defines "electronically furnishes" as "[t]o make available by electronic storage device, including floppy disks and other magnetic storage devices, or by CD–ROM," OCGA

21

word of limitation, meaning that "allowing access to information stored in a computer" is defined *exclusively* as "making material available by operating a computer bulletin board."

As used in statutes, the word "including" and the specific terms that follow it may serve to expand, to limit, or to confirm by illustration the meaning of a more general term that precedes it. See Berryhill v. Georgia Community Support & Solutions, Inc., 281 Ga. 439, 441 (638 SE2d 278) (2006) ("'[T]he word 'includes' is susceptible of meaning, inter alia, either 'encompasses' or 'is equivalent to'" (citation omitted)). Accord Montello Salt Co. v. State of Utah, 221 U.S. 452, 464-465 (31 SCt 706, 55 LEd 810) (1911) ("[Including] may have the sense of addition, as we have seen, and of 'also' but, we have also seen, 'may merely specify particularly that which belongs to the genus.'" (citation omitted); Black's Law Dictionary (6th ed. 1990) ("'Including' within statute is

§ 16-12-100.1 (a) (3) (A), but there is no evidence or argument that this definition applies to Wetzel's conduct. The 2011 version of the statute defined "bulletin board system" as "a computer data and file service that is accessed by telephone line to store and transmit information." OCGA § 16-12-100.1 (a) (1) (2011). The statute was amended in 2013 "so as to modernize provisions of the Code relating to sexual conduct and technology." Ga. L. 2013, p. 663. Subsection (a) (3) (B) was amended to add the word "system," so it now reads "computer bulletin board system," and the definition of "bulletin board system" is now "a computer data and file service that is accessed wirelessly or by physical connection to store and transmit information." OCGA § 16-12-100.1 (a) (1), (a) (3) (B). Unless otherwise specified, further references to the statute will be to the 2011 version at issue in this case.

interpreted as a word of enlargement or of illustrative application as well as a word of limitation.").[14]  Determining the sense in which the legislature used "including" in a particular statute depends on the exact language, context, and subject matter of the statute.  See Berryhill, 281 Ga. at 440-442.  When viewed in this way, it becomes clear that "including" is used in OCGA § 16-12-100.1 (a) (3) (B) to expand, rather than to limit, the ways by which obscene materials may be "ma[de] available [to minors] by allowing access to information stored in a computer."

We first examine the immediate context in which "including" appears in this statute.  Unlike in Berryhill, where "includes" was followed by two very detailed specific phrases, see 281 Ga. at 441, "including" in § 16-12-100.1 (a) (3) (B) is followed by only one specified method of making stored computer information available: "by operating a computer bulletin board."  If that single and straightforward method were meant to be the *only* prohibited way of

---

[14]  This uncertainty surrounding the meaning of "include" is not found in normal English usage or proper legal drafting, where "the word *include* does not ordinarily introduce an exhaustive list, while *comprise* . . . ordinarily does."  Antonin Scalia & Bryan A. Garner, Reading Law: The Interpretation of Legal Texts 132 (2012) (discussing the "Presumption of Nonexclusive 'Include'").  See also Black's Law Dictionary (10th ed. 2014) ("The participle *including* typically indicates a partial list . . . .").

23

"allowing access to information stored on a computer," then the general phrase preceding "including" would be surplusage; the statute could have defined "electronically furnishes" simply as "to make available by operating a computer bulletin board system." See Hill, 292 Ga. at 383 ("[T]his Court avoids interpreting statutes in a manner that renders any portion of them surplusage or meaningless."). This is the converse of the situation in Berryhill and similar cases, where reading the list of multiple specified phrases following "including" as merely illustrative of the preceding phrase would tend to render the specific phrases essentially superfluous. See Berryhill, 281 Ga. at 441-442.

But if "make available by allowing access to information stored on a computer" was meant to be read expansively, then why was it necessary to specifically enumerate "operating a computer bulletin board"? To answer this question, it helps to consider the status of computer-based communications when OCGA § 16-12-100.1 was enacted in 1993. See Ga. L. 1993, p. 735, § 1. That may be only 22 years ago, but given the extraordinary pace of change in information technology, it can be hard to recall what life was like way back

24

then.[15]

In 1993, the World Wide Web, on which today's familiar and massive computer-based communication hubs like Gmail, Facebook, and Reddit rely, was just beginning; it debuted in 1991. See Steve Jones, Encyclopedia of New Media 43 (2003). However, other methods of communicating electronically stored information through computers had been developed earlier and were being used over smaller networks. Instant messaging, for example, was invented in 1971 as a chat function on a government computer network. See id. at 237. And unix-to-unix copy, or UUCP, which was created in 1978, could be used to allow remote transfer of files or to send mail between machines connected with each other via phone lines. See Bernard Aboba, The Online User's Encyclopedia: Bulletin Boards and Beyond 90 (1993).

"Bulletin board" systems were another then-popular method of computer-based communication. They provided "the ability to send and receive local email, the uploading and downloading of files, and opportunities for online game playing with rudimentary graphics." Jones, supra, at 45-46. One article written

_____

[15] It is hard enough to remember life without ubiquitous "smart" phones, but the first iPhones and Android phones were released less than a decade ago, in June 2007 and October 2008, respectively.

25

in 1986, during the rise of computer bulletin boards, described them this way:

> Technically, a combination of software and hardware resides on some host computer system, and users access it through terminals or microcomputers by dialing in over dedicated or general purpose telecommunication lines. The bulletin board "posts" announcements, messages and entire discussions written by, and intended for, the users of the system. Different from electronic mail or teleconferencing, which are designed for a finite list of users or notes, computer bulletin boards are broadcast systems. Each message placed on them is intended for a wide audience; systems often seek out and encourage new users to sign on.

Sheizaf Rafaeli, The Electronic Bulletin Board: A Computer-Driven Mass Medium, 2 Computers and the Social Sciences 123, 123 (1986). Computer bulletin boards also provided the option of anonymity, allowing or even requiring users to communicate under pseudonyms. See id. at 124. During the early 1990s, the "golden years" of computer bulletin boards, there were more than 60,000 bulletin board systems in the United States, each with its own focus and community of users. See Jones, supra, at 47.

Given the growing popularity, potentially wide audience, and anonymity offered by bulletin boards as of 1993, it made sense for the General Assembly to want to ensure that those systems would be understood as coming within the scope of OCGA § 16-12-100.1. But there is no indication that the legislature

meant to target this one method of electronically furnishing obscene materials to minors to the exclusion of all others – allowing, for example, the electronic dissemination of such materials so long as it was done by instant messaging over a school's or employer's smaller network. Moreover, even if we read the statute to target only communication methods sharing key characteristics of computer bulletin boards, such as the ability to share information widely and anonymously, the web-based email of today – the sort of email that Wetzel used to send his naked pictures to S.B.J. – although looking different from bulletin-board-based email, would fit squarely within that category. Compare Frix v. State, 298 Ga. App. 538, 541-542 (680 SE2d 582) (2009) (deciding "that by listing specific examples, which are of the same class and kind," the General Assembly intended to limit the definition to that class and concluding that because a cell phone was not similar to the listed examples, it was not encompassed by the statute).[16]

---

[16] Wetzel relies heavily on Frix because in that case the Court of Appeals held that "including" as used in OCGA § 16-12-100.1 (a) (3) (A) – the other subsection defining "[e]lectronically furnishes" – is a word of limitation, and that sending a text message using a cell phone does not constitute making obscene material available "by electronic storage device" because, unlike material stored on a floppy disk or CD-ROM, text messages "need not be made available by furnishing the phone itself to another person." Frix, 298 Ga. App. at 541-542. That alternative definition, which gives three examples of similar devices that must be physically transferred in order to electronically furnish information stored on them, is not at issue in this case. Moreover, as a Court of Appeals decision, Frix is not binding on this Court. We do not believe that the reasoning of Frix extends to the statutory subsection at issue here, and we need not address in this case whether the

But there is even more reason to conclude that the specific mention of computer bulletin boards in the statute was meant to expand rather than restrict the reach of OCGA § 16-12-100.1, and indeed that it was important for the General Assembly to include this specific example to ensure that this type of electronic furnishing would be covered under the statute. This reason becomes clear when we focus on the full phrase used in the statute – "*operating* a computer bulletin board." A significant component of bulletin boards not seen in other early methods of computer-based communication was the bulletin board system *operator*. These operators performed "[v]ery clear forms of 'electronic gatekeeping'" and were "in the instrumental position to trim or censor the message flow." Rafaeli, supra, at 124. Thus, system administrators could allow access to obscene information stored in a computer not by making the information available to minors themselves, but by allowing other users to post it and minors to view it. The phrase the General Assembly added after "including" in § 16-12-100.1 (a) (3) (B) made sure that the statute would reach those linchpin computer bulletin board operators; it did not limit the statute to

holding of Frix was correct or would be correct as applied to all uses of cell phones or to all current or future cell phone technology.

28

their operations.

The final indicator of the statute's meaning comes from the fact that the General Assembly chose to retain (with technologically updated languge) the "operating a computer bulletin board" phrase when OCGA § 16-12-100.1 was amended in 2013. By that time – indeed, by 1997, see Jones, supra, at 47 – the use of computer bulletin boards had been almost entirely supplanted by electronic communication methods made possible by the World Wide Web. It is unlikely that the legislature updated the language of the statute to target only a near-extinct form of electronic communication and to leave unchecked the vastly more significant methods by which electronically stored information could be made available to minors in 2013. If, however, the legislature wanted to make sure that *all* such methods *remained* covered – even the increasingly unusual situation of bulletin board operation – then the 2013 amendments served a meaningful purpose.

For these reasons, OCGA § 16-12-100.1 is properly read to prohibit providing obscene materials to minors not only through operating a computer bulletin board but also through any other method of "allowing access to information stored on a computer." Sending an email is one of those other

methods. At Wetzel's trial, the Director of Information Technology for the Oconee County Board of Commissioners explained that email providers have servers, which are basically large computers. When an email is sent, the information is stored on the server of the recipient's email provider, and the recipient then accesses that information from that server. Thus, when Wetzel emailed the pictures of his penis to S.B.J.'s Gmail address, the pictures were stored on Google's computer server, and when she opened the emails, she retrieved that information. In this way, Wetzel "electronically furnishe[d]" the material alleged in Count 3 to S.B.J. by providing her with access to information stored on a computer, within the meaning of OCGA § 16-12-100.1 (a) (3) (B). And the jury instruction on this count tracked the language of the statute on this point.[17]

---

[17] The trial court instructed the jury on the meaning of "electronically furnishes" using the definitions in both OCGA § 16-12-100.1 (a) (3) (A) and (B). Wetzel argues that discussing both methods was error because the State argued in its closing only that he allowed S.B.J. access to information stored on a computer, not that he made information available to her by electronic storage device. "[G]enerally it is not error to charge the jury on a portion of the Code section that may be inapplicable under the facts in evidence." Chapman v. State, 273 Ga. 865, 868 (548 SE2d 278) (2001). This Court has noted an exception to this general rule: "it is error to charge [the jury] that a crime may be committed by either of two methods, when the indictment charges it was committed by one specific method." Id. (citations and quotation marks omitted). That exception does not apply here because the indictment did not specify the method by which Wetzel allegedly electronically furnished photographs of male genitals to S.B.J. Because the indictment did not specify a single method, and because there was no evidence (or argument) that Wetzel furnished any material to S.B.J. using an "electronic storage device," even if the trial court erred in failing to tailor the charge

(b)     Wetzel next contends that his conviction on Count 3 must be reversed because the State failed to prove that he knew or should have known that S.B.J. was under age 18.  OCGA § 16-12-100.1 prohibits electronically furnishing obscene material "to an individual whom the [defendant] knows or should have known is a minor," and defines "minor" as "an unmarried person younger than 18 years of age."  OCGA § 16-12-100.1 (a) (5), (b) (1).  The evidence at trial indicated that Wetzel did not know what grade S.B.J. was in, but he knew that she was a high school student when he furnished the obscene pictures to her in November 2011.  This evidence might not suffice to prove that Wetzel knew or should have known that S.B.J. was in fact only 15 years old at that time, but because the vast majority of high school students are under age 18 in November of a school year, the jury could reasonably conclude that, absent evidence to the contrary, a high school paraprofessional like Wetzel knew or should have known that S.B.J. was under 18 at the time of the crime.

Judgment affirmed in part and reversed in part.  All the Justices concur.

_____

to the evidence, there is no reasonable possibility "that the jury convicted [Wetzel] of the commission of a crime in a manner not charged in the indictment."  Id.  Thus, any error was harmless.  See Welker v. State, 273 Ga. 36, 38 (537 SE2d 661) (2000).