**FIFTH DIVISION**
**MCFADDEN, P. J.,**
**BRANCH and BETHEL, JJ.**

**NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**http://www.gaappeals.us/rules**

**October 25, 2017**

# In the Court of Appeals of Georgia

A17A0834. HILLEY v. THE STATE.
A17A1691. HILLEY v. THE STATE.

BRANCH, Judge.

A jury found Jeremy Hilley guilty of using a computer Internet service to seduce a person he believed to be a child as well as two counts each of attempted aggravated child molestation and attempted child molestation. On appeal from his conviction for these crimes in Case No. A17A0834, Hilley argues that the trial court made inadequate findings in its order denying his motion for new trial and that his due process rights were violated when a federal court quashed subpoenas seeking evidence against a federal agent involved in his arrest. In the companion appeal, Case No. A17A1691, Hilley argues that the trial court erred when it revoked his probation because Hilley was entitled to assert his Fifth Amendment right against self-

incrimination and because the State did not prove that Hilley was informed of the rules of his treatment program. We find no error and affirm in both cases.

"On appeal from a criminal conviction, we view the evidence in the light most favorable to the verdict, with the defendant no longer enjoying a presumption of innocence." *Reese v. State*, 270 Ga. App. 522, 523 (607 SE2d 165) (2004) (citation omitted). We neither weigh the evidence nor judge the credibility of witnesses, but determine only whether, after viewing the evidence in the light most favorable to the prosecution, "any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U. S. 307, 319 (III) (B) (99 SCt 2781, 61 LE2d 560) (1979) (citation omitted).

So viewed, the record shows that in late June 2010, Detective Chris Lyons of the Catoosa County Sheriff's Office placed an ad on Craigslist purporting to be from two girls looking to meet men who could buy the girls "s[ome] wine coolers." Hilley answered the ad, stating that he was 29, could send pictures, and "would love to party with you girls." When the officer responded with a message that the two girls were 14 and 15 respectively, Hilley asked whether they were "cops" or part of "a sting operation" but also said that he would "love to" meet them. After further discussion and an exchange of pictures, Hilley asked whether both of the girls were willing to

have sex with him. The officer responded that they were but asked Hilley to "bring s[ome] protection." After the exchange of further messages, some of them sexually explicit, Hilley agreed to meet at a local park at 6 p.m. on the following day.

When Hilley arrived at the park early, he was met by Detective Lyons and another officer, who confirmed Hilley's identity and arrested him. A search of Hilley's car by officers including FBI Special Agent Ken Hillman, the director of a joint task force on internet crimes against children, found two condoms as well as directions to the park. The officers also found that Hilley's cell phone number matched the one he had disclosed during the conversations with the detective. Hilley was charged with one count of using a computer internet service for the purpose of seducing a child, two counts of attempted aggravated child molestation, and two counts of attempted child molestation. After a jury found him guilty on all five counts, Hilley was convicted and sentenced to 20 years on probation, including 48 months in a detention center.

The sex offender special conditions of Hilley's probation included that (1) that Hilley have no contact, whether directly or indirectly, with any child under the age of 18 other than his own children; (2) that he "attend and actively participate in sex offender evaluation and treatment at a program approved by the Probation Officer[,]

abide by the rules of the treatment program[,] and successfully complete the program to the satisfaction of the Probation Officer and the treatment provider"; (3) that he "submit, at [his] own expense, to any program of psychological or physiological assessment at the direction of the Probation Officer or treatment provider," including polygraph testing "to assist in treatment, planning, and case monitoring"; and (4) that he "not [ ] possess or use any type of computer." Although Hilley signed an acknowledgment of some of the special conditions of his probation as to Counts 1 and 2, including that "violation of a condition of probation could result in revocation of all time remaining on the period of probation," he refused to sign acknowledgments as to Counts 3, 4 and 5 or any of the sex offender special conditions, which were read to him nonetheless.

On December 22, 2011, Hilley's first appellate counsel filed a motion for new trial. Between December 2011 and May 2014, Hilley was represented by three different attorneys. In May 2014, the fourth and current appellate counsel appeared, and she soon obtained a continuance of a hearing on the motion for new trial scheduled for July 7, 2014.

On July 13, 2015, Hilley filed an amended motion for new trial, with attachments including news articles and federal court orders quashing subpoenas

seeking evidence as to the activities of Special Agent Hillman and his task force. After obtaining another continuance, Hilley moved to recuse the trial judge. After a hearing, a second judge denied the motion to recuse, noting that it was based "in large part on speculation as to what may be revealed from sources that have been precluded from access by repeated orders" of the federal court. Hilley then filed a second amended motion for new trial, attaching many of the same documents attached to his first amended motion. The second amended motion noted that it did not "request oral argument" and asked the court "to rule on the motion after reviewing the record and the briefs." On November 4, 2015, and after noting that Hilley had thus "waived a evidentiary hearing," the trial court denied the second amended motion for new trial.

After serving the prescribed 48 months in the probation detention center, Hilley began weekly sex offender therapy sessions with Dr. Glenn Fraser in February 2016. On November 15 and December 20, 2016, Hilley appeared for polygraph tests. According to the polygraph examiner, during both the pre-test interview and the test itself, Hilley invoked his Fifth Amendment right against self-incrimination in response to questions as to whether he had unsupervised contact with anyone under age 18, whether he had used alcohol or illegal drugs, or whether he had violated any treatment or probation rules. Shortly afterward, Dr. Fraser released Hilley from

5

treatment because he was refusing to "engage in treatment." On February 7, 2017, the State petitioned for the revocation of Hilley's probation. The petition alleged that Hilley violated his probation when he "[f]ailed to abide with the sex offender conditions of probation, to wit: the defendant was terminated from sex offender treatment."[1]

At the March 2017 hearing on the petition to revoke Hilley's probation, Dr. Fraser testified that he had begun treating Hilley in February 2016, seeing him once a week. Fraser testified that he discharged Hilley in December 2016 for "multiple" reasons, including that Hilley "would not engage in treatment" and would "only talk about his case of trying to get off probation." Specifically, Fraser testified that "after failing the polygraphs," Hilley asserted his Fifth Amendment rights against self-incrimination. When Fraser responded by telling Hilley that treatment would necessarily require administering "more polygraphs to investigate . . . areas that were of concern," Hilley refused such tests in advance, asserting that they amounted to "cruel and unusual punishment." On cross-examination, Fraser explained further that

---

[1] Before counsel appeared on his behalf in the probation revocation proceedings, Hilley filed pro se motions to discontinue sex offender registration and to modify the conditions of his probation. It does not appear that the trial court ruled on either of these motions.

Hilley was terminated based on his high "level of denial" as to the facts of his offenses for a substantially longer period than usual, amounting to a refusal to engage in treatment. Specifically, and because Hilley "could not be accurately supervised" without polygraph testing, the treating psychologists were bound by their own contracts with the State not to grant him "credit under [Department of Community Supervision] guidelines for treatment." After hearing this testimony, the trial court found that Hilley had violated his probation by failing to complete treatment, granted the State's revocation petition, and ordered Hilley jailed for one year.

Hilley filed a direct appeal from the denial of his motion for new trial, and we granted his application for discretionary appeal from the revocation of his probation.

Case No. A16A0834

1. Although Hilley has not challenged the sufficiency of the evidence against him, the evidence outlined above was sufficient to sustain his conviction. See OCGA § 16-6-4 (defining child molestation and aggravated child molestation), 16-4-1 (defining criminal attempt to commit a felony), § 16-12-100.2 (d) (defining the offense of using an internet service to seduce or attempt to seduce a child or "another person believed by such person to be a child"); *Lopez v. State*, 326 Ga. App. 770, 773-774 (1) (a), (b) (757 SE2d 436) (2014) (evidence was sufficient to sustain

7

defendant's conviction for using a computer internet service and attempted aggravated child molestation, given that neither crime required proof that the defendant was communicating with an actual child victim, when the defendant "took substantial steps to meet with [the person believed to be a child] to engage in sexual activity that would constitute child molestation"); *Jackson*, supra.

2. Hilley first argues that the trial court erred in failing to make findings of fact and conclusions of law sufficient to show that it exercised its discretion in denying his motion for new trial on the general grounds. We disagree.

OCGA § 5-5-20 authorizes the trial court to grant a new trial "[i]n any case when the verdict of a jury is found contrary to evidence and the principles of justice and equity," and OCGA § 5-5-21 empowers the court to grant a new trial "where the verdict may be decidedly and strongly against the weight of the evidence even though there may appear to be some slight evidence in favor of the finding." As the Supreme Court of Georgia has previously noted, these two statutes, read together, give the trial court

> broad discretion to sit as a thirteenth juror and weigh the evidence on a motion for new trial alleging these general grounds. Our sovereign, the law, has in effect said to the trial judge: We charge you to let no verdict

8

stand unless your conscience approves it, although there may be some
slight evidence to support it.

*Walker v. State*, 292 Ga. 262, 264 (2) (737 SE2d 311) (2013) (citations and
punctuation omitted).

Because the question whether the evidence is sufficient to support a verdict is
a legal one, a trial court fails to exercise its discretion "when it evaluates the general
grounds by applying the standard of *Jackson v. Virginia*, supra, to a motion for new
trial based on the general grounds[.]" Id. at 264 (2) (citation omitted). As we have
noted, however,

in interpreting the language of an order overruling a motion for a new
trial, *it must be presumed that the trial judge knew the rule as to the
obligation thus devolving upon him, and that in overruling the motion
he did exercise this discretion, unless the language of the order
indicates to the contrary* and that the court agreed to the verdict against
his own judgment and against the dictates of his own conscience, merely
because he did not feel that he had the duty or authority to override the
findings of the jury upon disputed issues of fact.

*Copeland v. State*, 327 Ga. App. 520, 525 (2) (759 SE2d 593) (2014) (citation and
punctuation omitted; emphasis supplied).

This trial court's order gives no indication that it incorrectly applied the legal standard of *Jackson v. Virginia* to the question whether it should exercise its discretion and grant a new trial under the general grounds. As a result, and as in *Copeland*, "this is not a case where it is necessary for us to remand to the trial court for consideration of this issue under the proper standard." 327 Ga. App. at 527 (2) (citation and punctuation omitted). Compare *White v. State*, 293 Ga. 523, 525 (2) (753 SE2d 115) (2013) (trial court's "repeated statements" that the evidence was sufficient to sustain the verdict "denotes that the trial court failed to apply its discretion" in denying a motion for new trial asserting the general grounds) (citation and punctuation omitted).

3. Hilley also argues that he has been denied due process in a number of ways, including that (a) the federal court violated his right to counsel when it erroneously denied his subpoena requests for "documents and witnesses needed to investigate potential appellate claims" on the basis that the evidence was privileged; (b) the Georgia trial court violated his right to compulsory due process by failing to rule on his claim that the federal court's denial of the subpoenas was erroneous; and (c) he has been deprived of his right to a speedy appeal. These assertions have no merit.

(a) As to his claim that his right to counsel was violated, Hilley is alleging error by the federal court. Not having pursued an appeal of this action in federal court, however, Hilley has no remedy in this or any other Georgia court.

(b) As to his due process claim that the Georgia trial court should have ruled on the federal court's error, the argument portion of Hilley's appellate brief does not specify the documents and witnesses to which he was denied access by the federal court. It appears from the first portion of his brief, however, as well as the news stories attached to his motions for new trial, that he had sought evidence for the purpose of impeaching Special Agent Hillman, who was involved in Hilley's arrest and testified briefly at trial. We treat Hilley's argument as asserting error as to the Georgia trial court's denial of a motion for new trial on the basis of the "newly discovered evidence" referenced in the news stories filed below.

In his motions for new trial, Hilley made a variety of assertions as to how the federal court's quashing of the subpoenas deprived him of a "full and fair hearing" on the merits of his appeal. As we have often held, however, "[m]otions for new trial on the ground of newly discovered evidence are not favored and are addressed to the sole discretion of the trial judge, which will not be controlled unless abused." *Merka v. State*, 201 Ga. App. 471, 473 (2) (411 SE2d 357) (1991) (citation and punctuation

11

omitted). Further, "a new trial will not be granted if the only effect of the evidence will be to impeach the credit of a witness." *Timberlake v. State*, 246 Ga. 488, 491 (1) (271 SE2d 792) (1980) (citation and punctuation omitted); see also *Robinson v. State*, 308 Ga. App. 45, 48 (2) (d) (706 SE2d 577) (2011) (physical precedent only). The Supreme Court of Georgia has noted, moreover, that "[i]t is not enough to assert that [further discovery] might produce evidence helpful to the defense, i.e., to embark on a 'fishing expedition.'" *Sims v. State*, 251 Ga. 877, 880 (4) (c) (311 SE2d 161) (1984); see also *Dority v. State*, 335 Ga. App. 83, 107 (4) (i) (780 SE2d 129) (2015).

Here, Hilley sought the evidence concerning Special Agent Hillman's activities for the single, impermissible purpose of impeaching him after trial. See *Timberlake*, 246 Ga. at 491 (1). Further, as Hilley has not specified that the evidence he is seeking actually exists, it is clear that he is engaged in a fishing expedition. Accordingly, the trial court did not abuse its discretion when it denied Hilley's second amended motion for new trial. *Merka*, 201 Ga. App. at 472 (2) (trial court's denial of an extraordinary motion for new trial was not an abuse of discretion when defendant had sought only to impeach a witness).

(c) To the extent Hilley asserts that events below have deprived him of a speedy appeal, we note that "the Sixth Amendment to the United States Constitution

12

does not guarantee a right to a speedy appeal[.]" *Threatt v. State*, 282 Ga. App. 884 (640 SE2d 316) (2006). To the extent that Hilley has been deprived of such an appeal as a result of current appellate counsel's pursuit of the second amended motion for new trial, which resulted in the trial court's conclusion that she had waived a hearing on that motion, we note that current appellate counsel is barred from asserting her own ineffectiveness on appeal. *Danley v. State*, 342 Ga. App. 61, 67-68 (6) (802 SE2d 851) (2017). Further, "appellate delay is prejudicial when there is a reasonable probability that, but for the delay, the result of the appeal would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Chatman v. Mancill*, 280 Ga. 253, 260-261 (2) (e) (626 SE2d 102) (2006) (citation and punctuation omitted). No such prejudice has been shown here.

Case No. A17A1691

4. In the companion discretionary appeal, Hilley first argues that the trial court erred when it revoked his probation on the basis of his assertion of his Fifth Amendment right against self-incrimination. We disagree.

OCGA § 42-8-34.1 (b) provides that a trial court "may not revoke any part of any probated or suspended sentence unless the defendant admits the violation as alleged or unless the evidence produced at the revocation hearing establishes by a

13

preponderance of the evidence the violation or violations alleged." "[I]f some of the allegations regarding revocation are supported by admissible evidence," a trial court's decision to revoke probation "will be affirmed" as within the court's discretion. *Couch v. State*, 246 Ga. App. 106, 107 (2) (539 SE2d 609) (2000) (citation omitted).

The sex offender special conditions of Hilley's probation included the provision that he "successfully complete [his] [treatment] program to the satisfaction of the Probation Officer and the treatment provider." It is true that probation cannot be revoked merely on the basis of "refusing to answer incriminating [and] particular questions" during a polygraph examination. *Germany v. State*, 315 Ga. App. 717, 719 (1) (727 SE2d 240) (2012). Such is not the case here, however. Hilley does not dispute that his probation was revoked as a result of his refusal, lasting over almost a year, to engage in treatment. As we have noted, Dr. Fraser testified that Hilley was terminated based on his high "level of denial" as to the facts of his offenses for a substantially longer period than was usual. The record also shows that when Dr. Fraser informed Hilley that treatment would necessarily require administering "more polygraphs to investigate . . . areas that were of concern," Hilley refused such tests in advance, asserting that they amounted to "cruel and unusual punishment." Further, because Hilley "could not be accurately supervised" without polygraph testing, the

14

treating psychologists were bound by their own contracts with the State not to grant him "credit under [Department of Community Supervision] guidelines for treatment" pursued without polygraph testing.

This evidence, given in sworn testimony before the trial court, was sufficient to support that court's discretionary determination that Hilley's probation should be revoked because of his failure to complete treatment, which was a specific condition of that probation. See *Germany*, 315 Ga. App. at 719-720 (1) (where a probationer had "declined to participate in any fashion" in a polygraph examination, a trial court was authorized to revoke probation on the basis of a probationer's "failure to comply with [a] probation condition requiring him to undergo a polygraph examination"); *Lawson v. State*, 969 So.2d 222, 236-237 (IV) (Fla. 2007) (trial court did not abuse its discretion in finding defendant in violation of his probation and in revoking that probation for being discharged from drug treatment program for nonattendance, even though the probation order did not specify the number of attempts or the time certain he had to complete the program).

5. Hilley also asserts that the State failed to prove that he was actually informed of the rules of his sex offender treatment program. Specifically, Hilley argues that the special conditions of his probation were not sufficiently clear even when they

15

required him to "submit, at [his] own expense, to any program of psychological or physiological assessment at the direction of the Probation Officer or treatment provider," including any "polygraph" used "to assist in treatment, planning, or case monitoring."

> A trial court has broad discretion in sentencing to impose conditions reasonably related to the nature and circumstances of the offense and the rehabilitative goals of probation. . . . But such conditions must be stated with reasonable specificity to afford the probationer notice of the groups[,] places [and activities] he must avoid.

*Harrell v. State*, 253 Ga. App. 440, 441 (1) (559 SE2d 155) (2002) (citation and punctuation omitted).

As we have already noted, this record shows that although Hilley refused to sign the special conditions of his probation, he was informed of them, and those conditions were sufficiently specific to afford him notice of the need to participate in treatment, including polygraph testing. Likewise, Dr. Fraser informed Hilley that he was being terminated from treatment as a result of his failure to make substantial progress in it, and the revocation petition alleged that Hilley had failed to abide by the special conditions of his probation, which included the requirement that he complete sex offender treatment. The evidence thus supported the trial court's

16

judgment that Hilley had sufficient notice of and violated the terms of his probation. See *Germany*, 315 Ga. App. at 720 (2) (sentencing sheet "sufficiently informed [a probationer] that his entire probation sentence could be revoked for violating a particular probation condition"); *Ellis v. State*, 221 Ga. App. 103, 104 (2), (3) (470 SE2d 495 (1996) (special conditions of probation requiring submission to warrantless searches and barring possession of "sexually explicit" material were not impermissibly vague); *Haji v. State*, 331 Ga. App. 116, 117 (2) (769 SE2d 811) (2015) (affirming revocation of probation when "[f]rom the record both the defendant and the appellate court [could] ascertain the basis for the revocation") (citation omitted).

*Judgments affirmed. McFadden, P. J., and Bethel, J., concur*.