**THIRD DIVISION**
**DOYLE, P. J.,**
**BROWN, J., and SENIOR APPELLATE JUDGE PHIPPS**

**NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**https://www.gaappeals.us/rules**

**February 16, 2023**

# In the Court of Appeals of Georgia

A22A1451. YEAMANS v. THE STATE.

DOYLE, Presiding Judge.

Following a jury trial, Jacob Yeamans was convicted of computer pornography[1] and attempted child molestation.[2] Following the denial of his amended motion for new trial, Yeamans appeals, arguing that (1) the evidence was insufficient; and that the trial court erred by (2) denying his general demurrer to the child molestation charge; (3) granting the State's motion to admit evidence of a prior bad act based on a nolo contendere plea; and (4) failing to properly instruct the jury on several matters.

---

[1] OCGA § 16-12-100.2 (d) (1).

[2] OCGA §§ 16-4-1, 16-6-4 (a) (2). The trial court directed a verdict as to one count of criminal attempt to commit sexual exploitation of children. And after the jury could not reach as to a verdict as to one count of criminal attempt to commit trafficking of a person for sexual servitude, the trial court declared a mistrial as to that count.

For the reasons that follow, we reverse Yeamans's convictions. Because sufficient evidence supports the verdict for computer pornography, he may be retried on that count.

> On appeal from his criminal convictions, [Yeamans] is no longer presumed innocent and all of the evidence is viewed in the light most favorable to the jury's verdict. In evaluating the sufficiency of the evidence, we do not weigh the evidence or determine witness credibility, but only determine whether a rational trier of fact could have found [Yeamans] guilty of the charged offenses beyond a reasonable doubt.[3]

So viewed, the evidence shows that in early September 2019, a Forsyth County undercover officer posed as a female named "Kat" on a dating website known by law enforcement officers to be commonly used for prostitution. "Kat's" advertisement on the website listed her age as 19, listed her location as Cumming, Georgia, and contained a modified picture of the undercover officer that attempted to make her appear under the age of consent. The advertisement also stated that "Kat" accepted

---

[3] (Citations and punctuation omitted.) *Brailsford v. State*, __ Ga. App. ___ (1) (Case No. A22A1155 decided Jan. 3, 2023), quoting *Alvarado v. State*, 360 Ga. App. 113 (860 SE2d 886) (2021), *Miranda v. State*, 354 Ga. App. 777, 778 (841 SE2d 440) (2020).

payments in cash, and it allowed anyone to contact her personally, which would connect an interested person to the undercover officer's cell phone.

On September 4, 2019, Yeamans contacted "Kat" and asked whether she was actually 19, requested to know "Age, Rates, Kissable," which the undercover officer understood to be a request for her age, the price of her sexual services, and whether she would kiss him like a "girlfriend." "Kat" responded to Yeamans that she was 14 years old, her rates were $100 per half hour, and she would kiss. Yeamans responded, "Do you have [a place we can meet]? Can Daddy call you?" Yeamans also asked if she wanted to try and have sex in a Walmart bathroom or dressing room, to which "Kat" responded, "I mean is that where u want? U paying," to which Yeamans acknowledged that he would have to pay. Yeamans asked "Kat" how she became involved in prostitution and later asked if she wanted to move in with him; he also asked whether she liked to have sex or if she simply wanted money, suggesting she "be [his] baby girl." Yeamans also inquired as to whether "Kat" would send nude pictures and if she was the police — both of which she denied; he also asked if she would perform oral or anal sex without a condom and whether he could ejaculate in her mouth. When he asked what grade she was in, she responded that she was in the

ninth grade. Yeamans also stated that he wanted her to sit on his face so he could attempt to cause her to orgasm.

Yeamans asked "Kat" when she could meet, she responded the following day at 4:00 p. m., and later, the two planned for a meeting at a local grocery store in Forsyth County.[4] Although Yeamans said he would meet her, he never showed up, so "Kat" contacted him to ask where he was; he responded with text message links to the television show "To Catch a Predator," saying that he was not coming because he thought that she was a police officer. "Kat" texted back complaining that he had left her stranded without a ride, that she was going to get in trouble, and that the friend who she had ridden with had already left; he eventually apologized, but did not come to the location, instead sending a rideshare, which took her from the grocery store to another store that was closer to "Kat's" house. While waiting for the rideshare, "Kat" noticed that Yeamans's text screenshot of the rideshare request showed the scheduled pickup time for an hour earlier than her current time, and she accused him of lying to her about requesting the car. Yeamans responded that the time was set for his home in Wisconsin. "Kat" questioned whether Yeamans was even

_____

[4] A recording of the brief phone conversation arranging the meeting was not transmitted to this Court with the appellate record.

4

in Georgia, and he said he was in Gainesville for work, but later that evening he stated that he had caught a flight home.[5]

Yeamans continued to text "Kat," claiming that he trusted her now, although he had found it implausible that she was actually 14 and not the police, and he would help her by giving her money and being a friend, maybe meeting her in the future. He asked if she wanted to move to Wisconsin and offered to get her a bus ticket. The next day he asked her if she could receive money through an electronic account and if she would do video calls with him. He did not send her money or buy her a bus ticket. Police later used the rideshare records and credit card to determine Yeamans's location in Wisconsin, and he was arrested.

Prior to trial, Yeamans filed general and special demurrers to the indictment, challenging that the State had failed to properly allege the crimes of computer pornography and attempted child molestation. After a hearing on the matter, the trial court overruled the demurrers.

Also prior to trial, the State moved to admit evidence of Yeamans's no contest plea to a 2003 Wisconsin charge of possession of child pornography, contending that

---

[5] Other than Yeamans's statements to "Kat," which do not make sense temporally, the State did not present evidence that Yeamans was actually in Georgia when he communicated with the undercover officer.

5

it was admissible pursuant to OCGA § 24-4-404 (b) in order to show Yeaman's intent, knowledge, and absence of mistake as well as admissible pursuant to OCGA § 24-4-414. The Wisconsin criminal complaint stated that Yeamans's video company had been searched, and the officer discovered a large amount of child pornography on a computer belonging to Yeamans. After argument by the parties, the trial court allowed the State to present the prior conviction at trial.

At the close of evidence, the trial court directed a verdict on Count 3 (attempt to commit sexual exploitation of children), and after deliberations, the jury was unable to reach a verdict on Count 1 (attempt to commit trafficking for sexual servitude), which was nolle prossed by the State after Yeamans was sentenced. The jury found Yeamans guilty of Count 2 (computer pornography) and Count 4 (attempted child molestation). This appeal followed the trial court's denial of Yeamans's amended motion for new trial.

1. Yeamans argues that the trial court erred by overruling his demurrer to Count 4 - child molestation. We agree.

> A general demurrer challenges the sufficiency of the substance of the indictment. To withstand a general demurrer, an indictment must: (1) recite the language of the statute that sets out all the elements of the offense charged, or (2) allege the facts necessary to establish a violation

6

of a criminal statute. The true test of the sufficiency of an indictment to withstand a general demurrer is if all the facts which the indictment charges can be admitted, and still the accused be innocent, the indictment is bad; but if, taking the facts alleged as premises, the guilt of the accused follows as a legal conclusion, the indictment is good. An indictment is to be strictly construed against the State when a general demurrer has been filed against it. We review de novo the trial court's ruling on a general demurrer.[6]

OCGA § 16-4-1 states that "[a] person commits the offense of criminal attempt when, with intent to commit a specific crime, he performs any act which constitutes a substantial step toward the commission of that crime." In this case, Yeamans was charged with attempted child molestation under OCGA § 16-6-4 (a), which states that

> [a] person commits the offense of child molestation when such person:
> (1) [d]oes an immoral or indecent act to or in the presence of or with any child under the age of 16 years with the intent to arouse or satisfy the sexual desires of either the child or the person; or (2) [b]y means of an electronic device, transmits images of a person engaging in, inducing, or otherwise participating in an immoral or indecent act to a child under

---

[6] (Citations and punctuation omitted.) *Stapleton v. State*, 362 Ga. App. 740, 741-742 (1) (869 SE2d 83) (2021), quoting *Hinkson v. State*, 310 Ga. 388, 396 (4) (850 SE2d 41) (2020); *Strickland v. State*, 349 Ga. App. 673, 675-676 (2) (824 SE2d 555) (2019); *State v. Cerajewski*, 347 Ga. App. 454, 455 (1) (820 SE2d 67) (2018); *Bryant v. State*, 320 Ga. App. 838, 841 (3) (740 SE2d 772) (2013); and citing *Malphurs v. State*, 336 Ga. App. 867, 868 (785 SE2d 414) (2016).

the age of 16 years with the intent to arouse or satisfy the sexual desires of either the child or the person.

The indictment alleged that Yeamans

between the 4th day of September, 2019 and the 5th day of September, 2019, in the County of Forsyth, did knowingly and intentionally attempt to commit the crime of Child Molestation, in violation of Code section 16-6-4 of the Official Code of Georgia, in that the said accused did by means of an electronic device, to wit: cell phone, engage in immoral and indecent conversation involving sexual intercourse, anal intercourse, oral sex, masturbation and pornography with a person the accused believed to be a child under the age of 16, "Kat[,]" with the intent to arouse and satisfy the sexual desires of said accused, an act which constitute a substantial step toward the commission of said crime, contrary to the laws of this State, the good order, peace and dignity thereof.

In his demurrer to Count 4, Yeamans argued that the count failed to properly allege a crime under OCGA § 16-6-4 because the indictment only alleged that he had an indecent conversation with "Kat," that the conversation itself was a violation of OCGA § 16-6-4, which failed to meet the physical presence requirement of the

statute, and that the conversation was not sufficient to establish a substantial step toward committing a prohibited act under OCGA § 16-6-4.[7]

On appeal, Yeamans argues that the trial court erred by denying his demurrer to Count 4 because the charge indicted him for having a conversation with "Kat" and not for attempting to commit any actual physical touching or otherwise attempt to commit an indecent act "to or in the presence of or with" "Kat."[8] We agree. In *Vines v. State*,[9] the Georgia Supreme Court held that sexually explicit phone conversations between a defendant and child are not sufficient to establish child molestation under OCGA § 16-6-4.[10] This case has not been overruled by the Supreme Court.

---

[7] "To constitute a substantial step, an act must be one that is: done in pursuance of the intent, and more or less directly tending to the commission of the crime. In general, the act must be inexplicable as a lawful act, and must be more than mere preparation. Yet it can not accurately be said that no preparations can amount to an attempt. It is a question of degree[] and depends upon the circumstances of each case. The phrase 'inexplicable as a lawful act' does not mean that the act itself must be unlawful. Rather, it means that the act, in light of previous acts, constitutes a substantial step toward the commission of a crime." *Dennard v. State*, 243 Ga. App. 868, 871-872 (1) (a) (534 SE2d 182) (2000) (citations omitted).

[8] OCGA § 16-6-4 (a) (1).

[9] 269 Ga. 438 (499 SE2d 630) (1998).

[10] See id. at 439 (in order to meet the requirement that the act be done to, with, or in the presence of a child means "that the victim and accused must be together in order for the crime of 'child molestation' to be committed.").

Count 4 of the indictment charged Yeamans only with having indecent conversations with "Kat" via his cell phone, that is:

> said accused did by means of an electronic device, to wit: cell phone, engage in immoral and indecent conversation involving sexual intercourse, anal intercourse, oral sex, masturbation and pornography with a person the accused believed to be a child under the age of 16, "Kat", with the intent to arouse and satisfy the sexual desires of said accused. . . .

The conduct alleged here is conduct that *Vines* has explained is not made illegal by the plain language of OCGA § 16-6-4 (a) (1).[11] Moreover, the fact that the State couched the allegation in terms of an attempted crime does not save Count 4 because there is no allegation in the count of what acts Yeamans's conversations with "Kat" were going to lead to; essentially, the language circles back to the conversations themselves as the illegal act:

> [Yeamans] did by means of an electronic device, to wit: cell phone, engage in immoral and indecent conversation involving sexual

---

[11] Id. at 429. See also *Cooks v. State*, 325 Ga. App. 426, 427 (1) (750 SE2d 765) (2013) ("[T]here can be no conviction for the commission of a crime an essential element of which is not charged in the indictment. If an accused individual can admit to all of the allegations in an indictment and still be not guilty of a crime, then the indictment generally is insufficient and must be declared void.") (punctuation omitted).

10

intercourse, anal intercourse, oral sex, masturbation and pornography with a person the accused believed to be a child under the age of 16, "Kat", with the intent to arouse and satisfy the sexual desires of said accused, *an act which constitute a substantial step toward the commission of said crime, contrary to the laws of this State, the good order, peace and dignity thereof.*[12]

The only "said crime" alleged in Count 4 was the conversations between Yeamans and "Kat." And the earlier general reference to OCGA § 16-6-4 does not save Count 4 because the jury could have convicted Yeamans solely for having the conversations with "Kat," which again, was not in and of itself an illegal act under OCGA § 16-6-4.

The State contends that the addition of subsection (a) (2) to OCGA § 16-6-4 supersedes *Vines* and that a defendant no longer need be in the presence of the victim to attempt to commit child molestation. Thus, the State contends, the trial court did not err by denying the demurrer to the Count 4.[13] OCGA § 16-6-4 (a) (2), however, is limited explicitly to sending pornography with an electronic device to a child,[14] and

---

[12] (Emphasis supplied.)

[13] See OCGA § 16-6-4 (a) (2).

[14] See id. See also *Franco-Arroyo v. State*, 365 Ga. App. 369, 372 (1) (878 SE2d 609) (2022) (statutory construction requires that a court apply the plain and

11

it is undisputed that Yeamans never sent pornography to "Kat." The language in subsection (a) (2) is clear:

> [a] person commits the offense of child molestation *when such person*: . . . (2) *[b]y means of an electronic device, transmits images of a person* engaging in, inducing, or otherwise participating in an immoral or indecent act *to a child under the age of 16 years with the intent to arouse or satisfy the sexual desires of either the child or the person.*[15]

The legislature limited this subsection to the transmission of indecent images to children, and it then used several participles ("engaging," "inducing," and "participating") to describe the content of images that establish a violation of the statute.[16] Had the legislature intended to list verbs to indicate ways to violate the statute in OCGA § 16-6-4 (a) (2) in addition to transmitting images, the legislature would have kept the same present simple verb tense as "transmits." Thus, the plain

---

ordinary meaning to the words).

[15] (Emphasis supplied.)

[16] See, e.g., *Wetzel v. State*, 298 Ga. 20, 24 (2) (a) (779 SE2d 263) (2015) (utilizing the grammar in the statute to interpret its meaning).

language of the statute does not support the trial court's interpretation of the statute or the State's argument on appeal.[17]

And while we agree with the State that in order to prove an attempted child molestation the defendant need not ultimately make it in the presence of the victim, the State must first charge the defendant with intent to commit some specific conduct that amounts to an act prohibited by the statute. And here, the State failed to do so.[18] Accordingly, the trial court erred by denying Yeamans's demurrer to Count 4.[19]

---

[17] See, e.g., *Rice v. State*, 357 Ga. App. 873, 876-877 (1) (b) (852 SE2d 579) (2020) (citing *Vines* and finding that the defendant's act of taking pictures of clothed children while they slept did not constitute child molestation under the statute); *Prophitt v. State*, 336 Ga. App. 262, 269-271 (784 SE2d 103) (2016) (citing *Vines* and holding that the defendant's act of masturbating while watching a child through a hole in the in the wall did not constitute child molestation because the act did not meet the requirement of presence) (physical precedent only).

[18] See *Bolton v. State*, 310 Ga. App. 801, 803-805 (1) (714 SE2d 377) (2011) (discussing the interplay of statutes prohibiting solicitation and enticement to commit child molestation and the required showing for each), citing *Selfe v. State*, 290 Ga. App. 857, 861 (1) (660 SE2d 727) (2008) (overruled on other grounds).

[19] Based on this conclusion, we need not reach the issue of whether the State alleged a substantial step to support a finding of attempt, but we note that the State has failed to cite (and our research has not revealed) any case in which a conversation served as sufficient evidence of a substantial step to show an attempted child molestation without additional evidence of travel to a location where a physical meeting could have occurred. See, e.g., See *Brailsford*, ___ Ga. App. at ___ (1) (b) (Case No. A22A1155; decided Jan. 3, 2023) (defendant attempted to leave the arranged meeting place without getting out of his vehicle); *Franco-Arroyo*, 365 Ga.

13

App. at 370 (defendant arranged meeting with purported 14 year old and went to park to wait for her to meet him); *Hardy v. State*, 363 Ga. App. 734, 735 (872 SE2d 511) (2022) (defendant arrested after arriving at prearranged meeting location with prespecified wine cooler to meet underage girl for sex); *Metcalf v. State*, 349 Ga. App. 408, 409 (825 SE2d 909) (2019) (defendant traveled to prearranged location to meet purported underage girl for sex); *Reid v. State*, 349 Ga. App. 196, 200 (1) (825 SE2d 555) (2019) (physical precedent only) (defendant went to the arranged meeting place but left without exiting his vehicle); *Hilley v. State*, 344 Ga. App. 58, 58-59 (806 SE2d 280) (2017) (defendant arrested with condoms after coming to the predetermined meeting spot); *Smith v. State*, 340 Ga. App. 457, 457-458 (797 SE2d 679) (2017) (defendant arrested after arriving at hotel to have sex with purportedly underage girl); *Schlesselman v. State*, 332 Ga. App. at 453, 455 (1) (773 SE2d 413) (2015) (affirming defendant's conviction for attempted child molestation where the defendant arranged to pay for a night of "companionship" with a 14-year-old girl and drove to the meeting location with $297 in cash); *Young v. State*, 327 Ga. App. 852 (761 SE2d 801) (2014) (arrested after arriving at the agreed upon location); *Lopez v. State*, 326 Ga. App. 770, 774 (1) (b) (757 SE2d 436) (2014) (defendant communicated online with purported 14 year old and was apprehended after he drove two hours to meet her and admitted that he went prepared to have sexual relations with her); *Muse v. State*, 323 Ga. App. 779, 781-782 (1) (748 SE2d 136) (2013) (traveling over 90 miles to meet up and have sex with a purported underage girl constituted substantial step even if he attempted to leave the meeting place); *Brown v. State*, 321 Ga. App. 798, 800 (1) (743 SE2d 474) (2013) (holding that evidence was sufficient when, after engaging in internet communications, defendant "traveled to an arranged location to have sexual intercourse with [a] 14-year-old [girl], and that this was a substantial step toward committing the offense of criminal attempt to commit child molestation"); *Castaneira v. State*, 321 Ga. App. 418, 424 (2) (740 SE2d 400) (2013) (sufficient evidence of attempted child molestation where defendant engaged in sexually explicit Internet communications with officer posing as a 15-year-old girl, arranged to meet her for a sexual encounter, and traveled to an arranged meeting place); *Adams v. State*, 312 Ga. App. 570, 571-572 (718 SE2d 899) (2011) (defendant indicted after speaking to undercover cop posing as 14 year old and meeting at prearranged location to have sex); *Millsaps v. State*, 310 Ga. App. 769, 773 (3) (714 SE2d 661) (2011) (defendant had sexually explicit conversations after

14

2. Yeamans also argues that there was insufficient evidence to support the guilty verdict for the charge of computer pornography. We disagree.

OCGA § 16-12-100.2 (d) (1) states that

[i]t shall be unlawful for any person intentionally or willfully to utilize a computer wireless service or Internet service, including, but not limited to, a local bulletin board service, Internet chat room, e-mail, instant messaging service, or other electronic device, to seduce, solicit, lure, or entice, or attempt to seduce, solicit, lure, or entice a child, another person believed by such person to be a child, any person having custody or control of a child, or another person believed by such person to have custody or control of a child to commit any illegal act by, with, or against a child as described in Code Section 16-6-2, relating to the offense of sodomy or aggravated sodomy; Code Section 16-6-4, relating to the offense of child molestation or aggravated child molestation; Code Section 16-6-5, relating to the offense of enticing a child for indecent purposes; or Code Section 16-6-8, relating to the offense of

_____

he learned that the purported victim was 14 years old and traveled from Tennessee to the arranged meeting spot with condoms); *Smith v. State*, 306 Ga. App. 301, 302 (1) (702 SE2d 211) (2010) (defendant engaged in sexually explicit conversations, drove to an arranged meeting place, and fled from officers there); *Spivey v. State*, 274 Ga. App. 834 (619 SE2d 346) (2005) (defendant arrested after discussing sex with purported underage girl and then traveling to a skating rink to meet her, where he was arrested); *Dennard*, 243 Ga. App. at 873 (1) (b) (in the context of a demurrer, defendant's act of going to a meeting place is sufficient to show attempted child molestation).

public indecency, or to engage in any conduct that by its nature is an unlawful sexual offense against a child.

"When construing the meaning of a statute, this Court affords the statutory text its plain and ordinary meaning, viewing the statutory text in the context in which it appears, and reading the statutory text in the most natural and reasonable way, as an ordinary speaker of the English language would."[20] Yeamans contends that the statutory language of OCGA § 16-12-100.2 (d) (1) makes it illegal to commit acts intended to convince one child to commit an illegal sex act against another child.[21] The plain language of the statute, however, criminalizes any acts by a defendant using an electronic device or service to get a child or someone exercising authority over the child to allow the defendant to engage in criminal conduct of a sexual nature against any child, including the child being communicated with.[22]

Count 2 of the indictment specifically charged that Yeamans

---

[20] (Citation and punctuation omitted.) *Franco-Arroyo*, 365 Ga. App. at 372 (1).

[21] This argument was recently found meritless by this Court in *Franco-Arroyo*, id.

[22] See, e.g., id. See also *Lopez v. State*, 326 Ga. App. at 773 (1) (a) ("by its plain terms the statute is violated if the defendant believes the victim to be a child, even if the person the defendant actually communicates with is not a child").

16

between the 4th day of September, 2019 and the 5th day of September, 2019, in the County of Forsyth, did intentionally and willfully by means of . . . a computer on-line service, utilized an electronic device, to wit: a cell phone to solicit and entice "Kat", a person believed by the accused to be a child under 16 years of age, to commit sodomy, child molestation, and child prostitution by its nature is an unlawful sexual offense against a child, contrary to the laws of this State, the good order, peace and dignity thereof.

The evidence, as summarized above, shows that Yeamans went to a website that allows for individuals to make contact with other individuals in order to engage in sex acts, paid or otherwise. Yeamans solicited the individual he believed to be a female named "Kat" who listed her age as 19 to meet the website guidelines but later provided an age of 14 and repeatedly referred to being under the age of consent. Yeamans continued to chat with "Kat" despite knowing her purported age of 14, and he attempted to get "Kat" to meet him to engage in a myriad of sex acts, including oral and anal sodomy and vaginal intercourse in exchange for money and potentially in public.[23] The State was not required to show that Yeamans actually completed any

_____

[23] See OCGA § 16-6-2 (a) (1) ("A person commits the offense of sodomy when he or she performs or submits to any sexual act involving the sex organs of one person and the mouth or anus of another."); OCGA § 16-6-4 (a) (1) (a) ("A person commits the offense of child molestation when such person[ d]oes an immoral or indecent act to or in the presence of or with any child under the age of 16 years with

17

of the underlying crimes in order to support the verdict, and his electronic solicitations of "Kat" are sufficient to support the verdict.[24]

Yeamans also contends that "Kat" did not need to be urged to engage in sex acts or have sexually explicit conversations, and therefore, he either did not violate the statute, or alternatively, police entrapped him because the evidence shows that she was a willing participant that he did not have to "seduce, solicit, lure, or entice, or attempt to seduce, solicit, lure, or entice" to commit any sexual acts. As to his first argument, an individual under 16 years of age cannot consent to or be a willing

---

the intent to arouse or satisfy the sexual desires of either the child or the person"); OCGA § 16-6-5 (a) ("A person commits the offense of enticing a child for indecent purposes when he or she solicits, entices, or takes any child under the age of 16 years to any place whatsoever for the purpose of child molestation or indecent acts."); OCGA § 16-6-8 (a) ("A person commits the offense of public indecency when he or she performs any of the following acts in a public place: (1) An act of sexual intercourse; (2) A lewd exposure of the sexual organs; (3) A lewd appearance in a state of partial or complete nudity; or (4) A lewd caress or indecent fondling of the body of another person.").

[24] See, e.g., *Wetzel*, 298 Ga. at 29-30 (3) (b) ("A violation of OCGA § 16-12-100.2 (d) (1) requires that the defendant use an electronic device 'to seduce, solicit, lure, or entice, or attempt to seduce, solicit, lure, or entice a child' in order 'to engage in any conduct that by its nature is an unlawful sexual offense against a child.' Thus, while the 'unlawful sexual offense' alleged in the indictment need not be completed — the defendant may merely solicit or entice the child with the aim of engaging in the relevant criminal conduct — there must be such a solicitation or enticement that allows, or would allow, the predicate crime to be committed.").

18

participant in sexual conduct.[25] And to the extent that Yeamans argues that he was entrapped (which is a defense and not evidentiary insufficiency), he has failed to establish that defense.

> Entrapment is an affirmative defense that is established by showing that (1) the idea for the crime originated with the State agent; (2) the defendant was induced by the agent's undue persuasion, incitement, or deceit; and (3) the defendant was not predisposed to commit the crime. And as a general rule, in order to raise the defense of entrapment, the defendant must first admit the commission of the crime and then show that he did so because of the unlawful solicitation or inducement of a law enforcement officer. The rationale for this rule is that it is thought to be factually inconsistent and confusing for a defendant to deny that he committed a criminal act and simultaneously to complain that he was entrapped into its commission. But, if a reasonable inference of entrapment may be drawn by a rational jury from the State's evidence, the defendant is entitled to a jury charge on entrapment unless he has presented evidence of entrapment inconsistent with his denial of the commission of the crime.[26]

---

[25] See *Driggers v. State*, 291 Ga. App. 841, 842 (662 SE2d 872) (2008). See also *Franco-Arroyo*, 365 Ga. App. at 373 (2); *Logan v. State*, 309 Ga. App. 95, 100 (2) (b) (709 SE2d 302) (2011).

[26] (Citations and punctuation omitted.) *Bolton v. State*, 310 Ga. App. 801, 806-807 (2) (714 SE2d 377) (2011), quoting *Logan*, 309 Ga. App. at 97 (1) (a); *St. Jean v. State*, 255 Ga. App. 129, 130 (564 SE2d 534) (2002).

Here, the evidence shows that Yeamans continued to have sexually explicit conversations with "Kat" online despite his knowledge of her purported age, inquired into her availability to meet for sex acts, and asked whether she would set up a videochat account so she could make video calls to him even though he "contemporaneously express[ed] fear of the potential criminal sanctions he faced."[27]

Finally, although at times our appellate courts have utilized the fact that conduct is criminalized under one statute in an effort to determine whether the conduct falls within the ambit of another criminal statute, in this case, the conduct at issue is clearly within the conduct criminalized by OCGA § 16-12-100.2 (d).[28] Moreover, under OCGA § 16-1-7, if the State can show "the commission of more than one crime, the accused may be prosecuted for each crime" unless "[o]ne crime is included in the other."[29] Additional conduct is necessary to establish a violation of OCGA § 16-12-100.2 (d) (1) than the other crimes for which Yeamans was properly

[27] *Bolton*, 310 Ga. App. at 807 (2).

[28] Compare *Vines*, 269 Ga. 439-440.

[29] *Franco-Arroyo*, 365 Ga. App. at 374 (3) ("To determine if one crime is included in and therefore merges with another, we apply the 'required evidence' test set forth in *Drinkard v. Walker*, 281 Ga. 211 (636 SE2d 530) (2006). Under that test, we examine 'whether each offense requires proof of a fact which the other does not.'").

20

indicted, and the State was free to prosecute Yeamans for all of them.[30] Accordingly, this enumeration is without merit, and sufficient evidence was presented to support the verdict as to this count.

3. Yeamans also argues that the trial court erred by convicting him under OCGA § 16-12-100.2 because the trial court failed to properly instruct the jury on this offense. We agree.

"When a given instruction fails to provide the jury with the proper guidelines for determining guilt or innocence, it is clearly harmful and erroneous as a matter of law."[31]

> Revisiting Count 2 as alleged in the indictment, Yeamans was alleged to have
>
> intentionally and willfully by means of . . . a computer on-line service, utilized an electronic device, to wit: a cell phone to solicit and entice "Kat", a person believed by the accused to be a child under 16 years of age, to commit sodomy, child molestation, and child prostitution by its nature is an unlawful sexual offense against a child, contrary to the laws of this State, the good order, peace and dignity thereof.

---

[30] See *Franco-Arroyo*, 365 Ga. App. at 374 (3).

[31] (Punctuation omitted.) *Chase v. State*, 277 Ga. 636, 638 (1) (592 SE2d 656) (2004).

While Yeamans objected to the instruction for Count 4 (child molestation), which is part of the underlying instruction for Count 2 (computer pornography), he failed to object to the charge for Count 2. Accordingly, we review the jury charge for Count 2 under the plain error standard.[32]

> The test for a finding of plain error has four prongs: First, there must be an error or defect — some sort of deviation from a legal rule — that has not been intentionally relinquished or abandoned, i.e., affirmatively waived, by the appellant. Second, the legal error must be clear or obvious, rather than subject to reasonable dispute. Third, the error must have affected the appellant's substantial rights, which in the ordinary case means he must demonstrate that it affected the outcome of the trial court proceedings. Fourth and finally, if the above three prongs are satisfied, the appellate court has the discretion to remedy the error — discretion which ought to be exercised only if the error seriously affects the fairness, integrity or public reputation of judicial proceedings.[33]

In this case although Count 2 was predicated on the offenses of child molestation, sodomy, and child prostitution, the trial court did not define sodomy or child prostitution. The trial court defined attempt to traffic for sexual servitude for the

---

[32] See OCGA § 17-8-58 (b); *Williams v. State*, 306 Ga. 717, 720 (2) (832 SE2d 805) (2019).

[33] (Citation and punctuation omitted; emphasis omitted.) *Liggett v. State*, 353 Ga. App. 522, 523 (1) (a) (838 SE2d 608) (2020).

jury,[34] but that was not listed as a predicate act of Count 2 in the indictment. And while the trial court instructed on child molestation, this definition was based on the erroneous reading of OCGA § 16-6-4 that was provided in the indictment.[35]

> [I]n saying that a person violates OCGA § 16-12-100.2 (d) (1) by using an electronic device to seduce, etc.[,] a child in order "to engage in any conduct that by its nature is an unlawful sexual offense against a child," the General Assembly was requiring the State to allege and prove that the defendant's conduct violated another specific criminal law, not allowing the jury in each case to decide retroactively whether it believed the conduct at issue was "offensive."[36]

The failure of the State to correctly indict Yeamans for attempted child molestation and the incorrect jury instruction based thereon "resulted in [the

---

[34] "Trafficking a person for sexual servitude in violation of Code Section 16-5-46(c) of the Official Code of Georgia in that the said accused did knowingly recruit and entice Kat, a person the accused believed to be under the age of 18 years, for the purpose [sic] sexual servitude by offering to pay said person $100 per half-hour in order to ... perform sexual intercourse, oral sex, anal sex, acts which constitute a substantial step towards the commission of said crime contrary to the laws of this state, the good order, peace, and dignity thereof." We note that the jury was not able to reach a verdict on this count, which was later nolle prossed.

[35] See Division 1 supra. The State's brief claims that the trial court in the instructions "charged the elements of sodomy and child prostitution." The State failed to provide a record cite for this claim, and this Court's review of the jury instructions did not ascertain any instruction on sodomy or child prostitution.

[36] (Punctuation omitted.) *Wetzel*, 298 Ga. at 25-26 (2) (a).

23

likelihood of] the jury convicting [Yeamans] on Count [2] of the indictment after being misled about what it needed to decide to find him guilty of [computer pornography].[37] But because there was sufficient evidence to support this Count aside from the erroneous reliance on the incorrect definition of child molestation and un-instructed predicate acts of sodomy and child prostitution, the State may retry Yeamans on Count 4.[38]

4. Yeamans also argues that the trial court abused its discretion[39] by allowing the State to admit his nolo contendere plea to possession of child pornography as a prior act under OCGA § 24-4-404 (b) or OCGA § 24-4-414 on the basis that OCGA § 17-7-95 (c) prevents the use of such a plea. Because this error could occur on retrial, we address it.[40]

---

[37] Id. at 26 (2) (a).

[38] See *Pace v. State*, 274 Ga. 69, 71 (5) (548 SE2d 307) (2001). Compare *Wetzel*, 298 Ga. at 28-31 (3) (a)-(c) (holding that no retrial could occur on the count because the defendant was not indicted on any properly alleged underlying criminal act for OCGA § 16-12-100.2 (d) (1)).

[39] See *Chitwood v. State*, 352 Ga. App. 218, 224 (3) (a) (834 SE2d 334) (2019).

[40] See *Jones v. State*, 352 Ga. App. 380, 385, n.12 (834 SE2d 881) (2019), citing *Raines v. State*, 304 Ga. 582, 589 (2) (b) (820 SE2d 679) (2018) ("[T]he defendant may be retried if the evidence presented was sufficient to support his conviction for the crimes charged.").

"OCGA § 17-7-95 (c) prohibits the admission of a nolo contendere plea as evidence of a prior similar crime."[41] Despite this, the State moved prior to trial to admit evidence of Yeamans's 2003 nolo contendere plea to a Wisconsin charge of child pornography under both OCGA §§ 24-4-404 (b) and 24-4-414. The State contends, however, that under *Green v. State*,[42] the 2003 plea could be considered. In *Green*, however, the Georgia Supreme Court considered whether two Florida nolo contendere pleas could be used under this State's recidivism statute — OCGA § 17-10-7 (c), which directs that "in determining whether a conviction counts for recidivist sentencing when the proffered felony was committed out-of-state, we are to look at whether the defendant has been 'convicted under the laws of any other state[.]'"[43] The Court concluded that "in light of OCGA § 17-10-7 (c)'s express direction that the sentencing court consider the effect of a plea of nolo contendere under the laws of the state in which it was entered" and because Florida law allowed this use, then OCGA

---

[41] *Parrott v. State*, 206 Ga. App. 829, 835 (5) (c) (427 SE2d 276) (1992).

[42] 311 Ga. 238, 243-244 (1) (857 SE2d 199) (2021).

[43] Id. at 243 (1).

25

§ 17-10-7 (c) did not apply, and the trial court did not err by relying on the Florida nolo contendere convictions for this purpose.[44]

This case does not involve OCGA § 17-10-7, and neither OCGA § 24-4-404 nor OCGA § 24-4-414 contain the same "express direction" contained in OCGA § 17-10-7. But regardless of whether *Green's* reasoning applies here, Wis. Stat. § 904.10 is similar to our OCGA § 17-7-95. It states that

> [e]vidence of a plea of guilty, later withdrawn, or a plea of no contest, or of an offer to the court or prosecuting attorney to plead guilty or no contest to the crime charged or any other crime, or in civil forfeiture actions, is not admissible in any civil or criminal proceeding against the person who made the plea or offer or one liable for the person's conduct. Evidence of statements made in court or to the prosecuting attorney in connection with any of the foregoing pleas or offers is not admissible.[45]

Accordingly, the trial court erred by relying solely upon the Wisconsin nolo contendere plea as a prior bad act under OCGA § 24-4-404 (b) or § 24-4-414 without requiring the State to present evidence of the prior act by testimony or otherwise.

---

[44] Id. 243-244 (1).

[45] See also Wis. Stat. § 971.06 (1) ("A defendant charged with a criminal offense may plead as follows: (a) Guilty[;] (b) Not guilty[;] (c) No contest, subject to the approval of the court[; or] (d) Not guilty by reason of mental disease or defect.").

26

5. Based on the foregoing, any remaining enumerations of error are moot.

*Judgment reversed. Brown, J., and Senior Appellate Judge Herbert E. Phipps concur*.